227 N.J. Super. 51 (1988)
545 A.2d 798
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
KEITH ADAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 5, 1988.
Decided July 27, 1988.
*52 Before Judges PETRELLA and O'BRIEN.
Alfred A. Slocum, Public Defender, attorney for appellant (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Carol M. Henderson, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Keith Adams appeals from the denial of his post-conviction relief motion. After the denial of his direct appeal, Adams filed *53 a motion to correct an assertedly illegal sentence. This motion was denied on October 23, 1986 by the same judge who presided over Adams' jury trial in October 1980 and imposed sentence on February 20, 1981.
Setting forth his reasons in a well-written and comprehensive memorandum dated February 20, 1981, pursuant to R. 3:21-4(e) Judge Weinberg sentenced Adams to ten years on the second degree attempted aggravated sexual assault conviction; (N.J.S.A. 2C:5-1 and 2C:14-2a(3)); a consecutive ten year sentence on the second degree burglary conviction (N.J.S.A. 2C:18-2a(1)), and a consecutive 18 months sentence for the fourth degree criminal sexual contact conviction (N.J.S.A. 2C:14-3b). The judge merged the assault conviction (N.J.S.A. 2C:12-1a)[1] for sentencing purposes. A ten year period of parole ineligibility was imposed, and defendant was assessed a $5,000 penalty in favor of the Violent Crimes Compensation Board. The judge expressly considered and refused to merge the fourth degree criminal sexual contact conviction with the attempted aggravated sexual assault conviction.
On March 5, 1985 this court affirmed[2] Adams' convictions and sentences. The Supreme Court denied certification. 101 N.J. 258 (1985).
On October 17, 1986 Adams moved for post-conviction relief on the ground that the sentence imposed was illegal. He argued that the court should not have imposed consecutive sentences on the aggravated sexual assault conviction and burglary conviction. This motion was denied. Adams then *54 filed his notice of appeal out of time.[3]
On this appeal from the denial of his post-conviction relief application, Adams contends:
1) The trial court committed constitutional error in failing and refusing to merge the defendant's consecutive convictions and sentences for second degree burglary and fourth degree criminal sexual contact into the defendant's conviction for attempted aggravated sexual assault.
2) That portion of defendant's sentence mandating that he be ineligible for parole for ten years must be vacated and the matter remanded for a resentencing. (Not raised below.)
A review of the facts presented to the jury in the October 1980 trial is necessary in view of the merger arguments. Just before midnight on May 1, 1980 the victim, a 79 year old woman, was alone in her living room in her home in Somerdale. When she heard noises at the side door, she telephoned her neighbor and asked him to call the police. While she was still on the telephone, she heard a loud crash as an intruder broke through the side door. She saw a naked black man, later identified as defendant Keith Adams, enter her kitchen with a white cloth over his head and walking around in a stooped over manner. When the man saw her he put his hand over her mouth and told her to hang up the telephone. The victim did as she was told and pleaded with Adams not to hurt her. Adams nevertheless began to slap this elderly woman in the face, hit her, pull her by the wrists and bang her against the wall.
Adams then pulled the victim onto the couch and sat next to her. When she went to sit in a nearby chair, he told her not to sit there. Adams raised the victim's dress and forced her to sit on his lap. According to the testimony, because the victim had diverticulitis she was not wearing underwear. She was forced to sit on Adams' lap, and he began to "maul" her by moving his hands underneath her dress and feeling her breasts and vaginal *55 area. The victim indicated that her assailant's penis was not erect and no penetration occurred.
In the meantime, a police officer from the Somerdale police department responded to the victim's home at about 11:41 p.m. and was met by a neighbor. The officer observed the broken door on the right side of the house and heard a woman's voice saying "please don't, please don't." The officer radioed for assistance and a sergeant arrived and entered the house through the broken side door.
Despite the dim lighting, the sergeant observed two individuals sitting in a chair. The officer described Adams as being in a "pumping position." He walked towards them with a flashlight in one hand and a gun in the other. When the sergeant was about eight feet from them, he turned his flashlight on Adams. He saw the victim and Adams in the chair, and said "police, freeze or I'll shoot." When the flashlight was upon the man the sergeant recognized it was Keith Adams from previous encounters. Adams then lifted the victim and turned her towards the policeman who observed that Adams was naked. After moving one step to the left, Adams then dove through a window.
The other police officer who had remained outside heard the breaking glass and saw a figure running to the back of the house. The officer pursued the man who he described as a tall, well-built, unclothed black man; he was not able to see his face. The pursuit ended when the officer was unable to jump over a fence which Adams had vaulted.
After the incident the victim would not go to the hospital, although she testified that as a result of the episode her shoulders caused her pain.[4] Adams was subsequently arrested *56 at his sister's home and it was observed that his socks were wet on the bottom, and that there were scratch marks on his body. He was taken to John F. Kennedy Hospital and his clothing was forensically examined. The boxer shorts which he was wearing at the time of the arrest had a blood spot which proved to be of human origin. His socks revealed the presence of hair from a Caucasian individual and when compared with the hair of the victim matched 10 out of 27 characteristics. A window shade obtained at the victim's home also tested positively for human blood. A pair of light blue boxer shorts was found at the scene of the incident. At the trial Adams presented an alibi defense and testified that he and a friend had been drinking that night at his sister's home.
Adams offered various explanations for the cuts and scratches found on his body at the time of his arrest. He explained that he received the scratches on his arms, back and knee when he climbed through a window after his sister's daughter locked him out. Adams also said that he scratched his shins tripping on the steps and that the injuries to his forearm came from climbing a tree on which there was a Clorox bottle with wires protruding. The cut on his wrist was assertedly received from a tin can while taking out the trash.
Adams argues that the judge erred in refusing to merge his convictions for second degree burglary and fourth degree criminal sexual contact into his conviction for attempted aggravated sexual assault, essentially relying on State v. Ramos, 217 N.J. Super. 530 (App.Div. 1987). The State argues against merger and takes the position that Ramos was wrongly decided on the merger issue. Moreover, it opposes Adams' application on the procedural grounds that he is barred from seeking post-conviction relief under R. 3:22-4 because the issue could *57 have been raised on his direct appeal, and under R. 3:22-12 because an illegal sentence is not involved.

I
We deal first with the procedural issue. Defendant seeks to avoid the potential proscription of R. 3:22-4 for grounds not raised in a prior appeal and the five year time limits of R. 3:22-12 by arguing in connection with the post-conviction relief appeal that the sentence was illegal. The State argues that this was an issue which could and should have been raised on the direct appeal and hence should be barred on this post-conviction relief proceeding by R. 3:22-4. Clearly post-conviction relief proceedings are not a substitute for a direct appeal. R. 3:22-3; State v. Cerbo, 78 N.J. 595, 605 (1979). Undoubtedly merger of the sentences was an issue which could and should have been raised on the direct appeal. Indeed the sentencing judge had specifically addressed and denied merger of the sexual contact conviction.
It was not argued either after the jury verdict or on Adams' first appeal that the burglary conviction merged with the attempted aggravated assault conviction. Moreover, the issue of the consecutive ten year sentence being excessive was expressly raised and decided adversely to defendant in the prior appeal. Nonetheless, State v. Miller, 108 N.J. 112, 116 (1987), established that merger "implicates a defendant's substantive constitutional rights." Thus, if there should have been a merger of offenses, then the sentence is considered illegal and the issue is cognizable on a post-conviction relief application under R. 3:22-12 since a petition to correct an illegal sentence may be filed at any time.

II
The starting point in consideration of the merger issue is similar to that in a claim of double jeopardy, i.e., whether an *58 accused who has committed one offense is being punished as if he had committed two offenses:
We start with the proposition that what is disallowed is double punishment for the same offense. Since it is the legislative branch that defines the unit of prosecution or `offense' and ordains its punishment,... we must first determine whether the legislature has in fact undertaken to create separate offenses. .. . [State v. Davis, 68 N.J. 69, 77-78 (1975) (citation omitted).]
Likewise, N.J.S.A. 2C:1-8 sets forth circumstances proscribing prosecution for multiple offenses.
The traditional test applied in merger cases has been whether the particular act involved in a single transaction is a distinct criminal offense or an integral part of the principle offense charged. See State v. Miller, supra (108 N.J. at 116-120); State v. Jamison, 64 N.J. 363, 380 (1974), and State v. Hundley, 134 N.J. Super. 228, 230 (App.Div. 1975). Our cases have adopted a flexible approach which emphasizes "fairness and fulfillment of reasonable expectations in light of constitutional and common law goals." State v. Davis, supra (68 N.J. at 81) (quoting State v. Currie, 41 N.J. 531, 539 (1964)). See also State v. Mirault, 92 N.J. 492, 501 (1983). It is appropriate to consider such factors as the nature of the offenses, the time and place of each offense, whether the evidence on one count of an indictment is necessary or sufficient to sustain a conviction under another count, whether the offense is an integral part of the larger scheme, the intent of the accused, the status of the victim, the interests to be protected and the consequences of the violation of the criminal standards. State v. Miller, supra (108 N.J. at 119-120); State v. Truglia, 97 N.J. 513, 520 (1984); State v. Mirault, supra (92 N.J. at 501-502); State v. Best, 70 N.J. 56, 63 (1976); State v. Davis, supra (68 N.J. at 81).
In considering whether Adams' convictions for either second degree burglary or fourth degree criminal sexual contact, or both, should have merged with his conviction for second *59 degree attempted aggravated sexual assault,[5] it is necessary to analyze the above factors in relation to the facts and the statutes violated. As noted in State v. Miller, supra (108 N.J. at 118):
... merger may be improper even where a single course of conduct constitutes a violation of two different criminal statutes. The factor critical to the merger decision in this case stems from the different interests protected by the statutes violated.
An analysis of the burglary statute (N.J.S.A. 2C:18-2a(1) and b(1)), discloses that defendant was guilty of a burglary when he entered the victim's premises by breaking through the side door. He not only broke into a dwelling house and destroyed property, but also inflicted harm on the victim. An intent, at the time of entry, to commit a specific offense need not be shown. This burglary offense, which otherwise would have been a third degree offense, was raised to a second degree offense because Adams either inflicted or attempted to inflict bodily injury on his victim. Burglary is defined as:
a. Burglary defined. A person is guilty of burglary if, with purpose to commit an offense therein he:
(1) Enters a structure, or separately secured or occupied portion thereof, unless the structure was at the time open to the public or the actor is licensed or privileged to enter; or ...
* * * * * * * *
(b) Grading. Burglary is a crime of the second degree if in the course of committing the offense, the actor:

*60 (1) Purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone; or ...
* * * * * * * *
Otherwise burglary is a crime of the third degree. An act shall be deemed `in the course of committing' an offense if it occurs in an attempt to commit an offense or in immediate flight after the attempt or commission. [N.J.S.A. 2C:18-2] [Emphasis supplied.]
To have been found guilty of aggravated sexual assault, Adams would have had to have committed an act of sexual penetration on the victim. That did not occur, although the facts indicate, and the jury could reasonably have found, that such action had been attempted. N.J.S.A. 2C:14-2a sets out six separate categories, with various subcategories, which result in a sexual assault being denominated "aggravated," thus advancing it to a crime of the first degree. Here, under the indictment and based on the evidence and the judge's instructions, the jury could have found attempted aggravated sexual assault based on either an "aggravated assault on another" or a "burglary." N.J.S.A. 2C:14-2 provides:
Sexual assault.
a. An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
* * * * * * * *
(3) The act is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape.
* * * * * * * *
(6) The actor uses physical force or coercion and severe personal injury is sustained by the victim.
Aggravated sexual assault is a crime of the first degree. [Emphasis supplied.]
The indictment had charged that the sexual offenses were committed during the commission of a "burglary and aggravated assault on another." Although the jury's finding of the commission of either an aggravated assault or burglary would be sufficient to raise the sexual assault conviction to a first degree aggravated sexual assault, the fact that sexual penetration was attempted, rather than completed, see N.J.S.A. *61 2C:5-1, results in the first degree offense[6] being thereby reduced to a second degree offense. N.J.S.A. 2C:5-4a.
The facts here clearly indicate conduct constituting violations of different criminal statutes, thus militating against merger. The fact that the sexual assault was committed following, or during the commission of, a burglary constituted an aggravating factor.[7] This is in effect an enhancement feature which is essentially determinative of the penalty exposure for the particular sexual assault, and generally serves to raise second degree sexual assault (N.J.S.A. 2C:14-2b) to first degree aggravated sexual assault. However, as noted, because penetration was not accomplished, the offense was an attempted aggravated sexual assault.
We view the listed additional offenses and circumstances in N.J.S.A. 2C:14-2a(1) through (6) as enhancement features which raise the degree of the crime. They are enhancement features because each in its own way reflects a legislative recognition of an additional threat of physical or psychological harm to the victim, over and above the act of sexual violence. They thus authorize increased punishment because of the increased risk of harm to the victim when the sexual assault or attempted offense is committed in connection with any one or more of the specified other offenses, thus becoming "aggravated." The same reasoning would apply to an aggravated sexual contact situation under N.J.S.A. 2C:14-3a.
*62 Cases such as State v. Davis, supra (68 N.J. at 69); State v. Truglia, supra (97 N.J. at 513); State v. Best, supra (70 N.J. at 56); State v. Allison, 208 N.J. Super. 9, 24-25 (App.Div. 1985), certif. den. 102 N.J. 370 (1985), emphasize the importance of considering the facts and the status of the victim in deciding merger. We are satisfied here, that the "consequences of the criminal standards transgressed" were not the same and that merger of the two offenses would not adequately redress the entry into the victim's dwelling house and "the profound injury" inflicted on the elderly victim here. State v. Miller, supra (108 N.J. at 120). The elements of these crimes are different, as are the facts supporting them. Burglary is a distinct offense from the sexual assault offense and neither is an integral part of the other. The burglary was complete when Adams entered the dwelling house with intent to commit an offense. Indeed, a jury might find beyond a reasonable doubt that defendant's purpose in entering the structure was to commit any offense, such as a theft, based solely on circumstantial evidence, and that alone would amount to a burglary. See State v. Cantalupo, 187 N.J. Super. 113, 123 (App.Div. 1982), certif. den. 93 N.J. 274 (1983) (use of circumstantial evidence). Moreover, simple assault would be a sufficient other offense. See discussion, infra (pages 64 to 66). The jury had ample basis to find that defendant was guilty of attempted aggravated sexual assault because of an attempt to commit an act of sexual penetration during the commission, or attempted commission, of either an aggravated assault or the burglary. N.J.S.A. 2C:14-2a(3); N.J.S.A. 2C:5-1. Thus, there is no merger here. See State v. Fraction, 206 N.J. Super. 532, 538 (App.Div. 1985).
The State recognizes that State v. Ramos, supra (217 N.J. Super. 530) appears to support defendant's claim of merger of the second degree burglary conviction into the second degree attempted aggravated sexual assault conviction. Ramos was decided approximately two months before State v. Miller, supra (108 N.J. at 112), and did not discuss State v. Mosch, 214 *63 N.J. Super. 457 (App.Div. 1986), certif. den. 107 N.J. 131 (1987). In Mosch, the defendant entered the victim's bedroom, took money from her purse as well as panty-hose to make a head mask, and then approached the sleeping victim and wakened her by touching her genital area. As in Ramos, when the victim began to scream, defendant ran out of her apartment. In Mosch, we found no merger of the burglary conviction with either the sexual contact or terroristic threat convictions. Id. at 465. In light of Miller and Mosch, we are unable to apply the reasoning in Ramos. We recognize that Ramos does not say, and we would not so apply it, that every attempted aggravated sexual assault would merge with the commission or attempt to commit one of the offenses itemized in N.J.S.A. 2C:14-2a(3). Our reading of the statutory provisions leads us to conclude that the Legislature intended to and did create separate and distinct offenses for burglary and sexual assault which do not merge. State v. Miller, supra (108 N.J. at 119); State v. Mosch, supra (214 N.J. Super. at 462); State v. Pyron, 202 N.J. Super. 502, 504 (App.Div. 1985).
We cannot conclude that the Legislature intended the survival of only one crime when the defendant commits both an aggravated sexual assault or an attempted aggravated sexual assault during the course of one of the crimes listed in N.J.S.A. 2C:14-2a(3), such as a burglary, kidnapping, murder or aggravated assault. It would be incongruous to suppose that a kidnapping, murder or arson (offenses included in N.J.S.A. 2C:14-2a(3)) would merge with an attempted aggravated sexual assault, even if we merged the "lesser offense" into the greater. State v. Ramos impliedly recognized that merger would not have been required if the defendant there had been charged with second degree attempted sexual assault rather than attempted first degree aggravated sexual assault. 217 N.J. Super. at 539. It is difficult to conclude logically that there should be a merger where, as here, in the course of a burglary Adams attempted to commit an act of sexual penetration, and also used physical force or coercion to injure the victim (even if *64 not "severe personal injury," but involving somebody he perhaps knew or should have known was physically helpless). In the same vein it appears incongruous to hold that because Adams was charged with the "greater" degree offense[8] there would be a merger, but that there would be no merger if he had been charged with and convicted of the lesser degree offense of second degree sexual assault (or convicted thereof as a lesser included offense). See N.J.S.A. 2C:14-2c(1) and (2); N.J.S.A. 2C:5-4a. These offenses would have remained second degree crimes (N.J.S.A. 2C:5-4a) and would not have merged with a burglary conviction.
If the reasoning in Ramos applied, there would be little to deter an individual from committing a sexual assault during a robbery, kidnapping, burglary or any of the other crimes enumerated in N.J.S.A. 2C:14-2a(3). We accordingly reject defendant's arguments.
The legislative history also supports our conclusion. Under the former Title 2A breaking and entering with intent to commit a crime was a separate and distinct offense from any subsequent offense committed after the breaking and entry and did not merge. See, e.g., State v. Pyron, supra (202 N.J. Super. at 504); State v. Vassalluzzo, 113 N.J. Super. 140, 141-142 (App.Div. 1971), supplemented 114 N.J. Super. 153 (App.Div. 1971), aff'd o.b. 58 N.J. 227 (1971) (convictions for breaking and entering with intent to rob and robbery did not merge); State v. Simmons, 98 N.J. Super. 430, 440-441 (App.Div. 1968), aff'd 52 N.J. 538 (1968), cert. den. 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969) (entry with intent to rape and rape did not merge and consecutive sentences could be imposed); State v. Craig, 48 N.J. Super. 276, 279 (App.Div. 1958) (breaking and entry and unlawful possession of burglary tools did not merge); State v. Quatro, 44 N.J. Super. 120, 127 (App.Div. 1957), cert. *65 den. 355 U.S. 850, 78 S.Ct. 73, 2 L.Ed.2d 60 (1957) (breaking and entry with intent to steal did not merge with convictions for larceny or receiving stolen property).
Although the commissioners who proposed the draft Penal Code in 1971 suggested a different legislative scheme for merger where a burglary was involved, the Legislature did not change the law when it ultimately adopted the Penal Code in 1978, effective September 1, 1979 (L. 1978, c. 95). Rather, the legislative history makes clear the intent to preserve the prior law. If the commissioners' version had been adopted, the proposed Penal Code would have provided:
C. Multiple Convictions. A person may not be convicted both for burglary and for the offense which it was his purpose to commit after the burglarious entry or for an attempt to committ that offense. [I Final Report of the New Jersey Criminal Law Revision Commission: Report and Penal Code proposed section 2C:18-2c, 68 (1971)].
The accompanying Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary, p. 211 (1971), stated that the purpose of the proposed duplicate penalties provision was:
5. Duplicate Penalties. The provision in Subsection c restricting duplicate convictions for burglary and for the offense which the burglary intended to carry out is designed to prevent the abusive practice of imposing consecutive sentences for burglary with intent to steal and for the actual theft.
The Legislature rejected the commission's proposed section which would have purported to limit multiple convictions for the burglary and the offense committed, if any, after entry. In effect the existing law was continued. State v. Pyron, supra (202 N.J. Super. at 504-505); Knowlton, Comments upon the New Jersey Penal Code, 32 Rutgers L.Rev. 1, 13-14 (1979); N.J.S.A. 2C:1-1e. Indeed, we held in Pyron that "[t]he definition of burglary in N.J.S.A. 2C:18-2(a)(1) is sufficiently similar to what had been the definition of breaking and entering that we must follow the pre-Code holding that there is no merger." 202 N.J. Super. at 504-505.
Even the Commentary to the Code recognized that it was necessary to say "any offense" (or "an offense" as adopted in *66 the Code) in the definition of burglary. The Commentary stated:
3. Criminal Purpose. Unlike our law, the Code makes criminal the burglarious purpose to commit `any offense.' Three aspects of the provision make it permissible to so broaden the crime. These are (1) the restrictions of burglary to occupied structures or vehicles, (2) the requirement of unlawful or intrusive entry, and (3) the moderation of penalties except in circumstances of special danger. Absent these, burglary law would visit its special severity inappropriately such as on a tramp who enters a deserted barn meaning to burn a plank for warmth, or a swindler who enters a store to sell worthless securities or pass a bad check.
To specify `any offense' comports better with the realities of law enforcement. The burglar is often apprehended, if at all, in the process of entering, when it may be difficult to know more than that he is up to some mischief. Recognition of this is reflected in the rule that the specific criminal purpose need not be pleaded or proved with the same particularity as in prosecuting the crime which the burglar had in mind. If there is reasonable doubt as to the criminal purpose of the intruder, it should be enough to convict him of criminal trespass. Certainly intrusion for such innocent purposes as sleep, escape from inclement weather, or to secure an interview, should not entail the possibility of criminal penalties, based on a presumption of criminal intent. MPC T.D. 11, pp. 60-61 (1960). See State v. Tassiello, 75 N.J.Super 1 (App.Div.) affd., 39 N.J. 282 (1962).
The word `therein' in Subsection a is intended to make it clear that the mere purpose to commit criminal trespass by intrusion into the premises does not satisfy the criminal purpose requirement for burglary.
Burglary is a statutory element of attempted aggravated sexual assault. However, to strictly construe it as a lesser included offense or as merely an element of attempted aggravated sexual assault would not only be contrary to the intent of the Legislature, but would allow a free crime in this case, and potentially other cases. See State v. Yarbough, 100 N.J. 627, 643 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), which acknowledged that free crimes were inappropriate under a rational sentencing scheme.
The harm from the attempted aggravated sexual assault is of a different nature from that involved in the burglary. It is one of the most vicious insults that can be made against a person, with devastating physical and emotional effects. The fact that it is committed during the course of one of the crimes enumerated in N.J.S.A. 2C:14-2a(3) only enhances the potential risk of *67 harm to the victim. It was because the Legislature considered sexual assaults committed during the course of such other crimes, as well as in the other subsections of N.J.S.A. 2C:14-2a, to be of such a serious nature that enhancement of the punishment was required. Hence, a sexual assault which is denominated "aggravated" is a first degree crime. The degree specified is meant to delimit the class of the offense. See N.J.S.A. 2C:1-4. We thus conclude that this enhancement, which in some ways is similar to the armed enhancement feature under the former N.J.S.A. 2A:151-5,[9] does not bar multiple convictions and punishment for the sexual offense and the other felony committed during the criminal episode. See State v. Sanchez, 183 N.J. Super. 391, 394-396 (App.Div. 1982).

III
Criminal sexual contact is denominated "aggravated" and raised from a fourth degree to a third degree offense if the circumstances are as listed in various aggravated sexual assault provisions, N.J.S.A. 2C:14-2a(2) through (6); N.J.S.A. 2C:14-3.
It is indeed a close question whether the criminal sexual contact conviction should merge with the attempted aggravated sexual assault conviction. Merger of these offenses was expressly rejected by the trial judge at sentencing. The issue had been raised below and could have been raised on direct appeal. Hence, the issue would normally be foreclosed from post-conviction attack. R. 3:22-4. However, on the merits we agree with the sentencing judge's reasoning, bearing in mind that he presided over the trial, that there should be no merger here. Adams was guilty of criminal sexual contact when he committed an act of sexual contact with the victim and used physical *68 force or coercion, even though the "victim [did] not sustain severe personal injury." N.J.S.A. 2C:14-3b; N.J.S.A. 2C:14-2c(1).[10] The criminal sexual contact conviction was based upon defendant's fondling of the victim's breasts and genital area in addition to the physical abuse he inflicted upon her. The facts supporting each of these offenses are different in this case. Hence, merger of the fourth degree criminal sexual contact conviction into the second degree attempted aggravated sexual assault conviction would not be warranted. See State v. Miller, supra (108 N.J. at 112).

IV
Defendant's remaining argument, not raised below, that the imposition of a ten year parole ineligibility period was improper has merit. No more than five years of parole ineligibility could be imposed on either of the two ten year sentences. See N.J.S.A. 2C:43-6b. The State concedes this because any period of parole ineligibility must be allocated between the various convictions and cannot be imposed as an aggregate number of years. Both the State and Adams request a remand for resentencing because the trial judge improperly imposed an aggregate period of ten years of parole ineligibility for the attempted aggravated sexual assault conviction and the burglary conviction for which Adams received a ten year sentence on each. The trial court is obligated to impose any ineligibility term on each count or specific term of sentence imposed. N.J.S.A. 2C:43-6b; State v. Alevras, 213 N.J. Super. 331, 342 (App.Div. 1986); State v. Vaccaro, 150 N.J. Super. 410, 413 (App.Div. 1977).
*69 Except for the remand ordered hereby with respect to the aggregate period of parole ineligibility imposed, the decision of the trial judge denying Adams' application is affirmed.
NOTES
[1] Defendant was convicted of simple assault, the lesser included offense of the charge of aggravated assault. N.J.S.A. 2C:1-8d(1) defines a lesser included offense as one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged."
[2] Our affirmance of the convictions was under docket No. A-3954-81, decided March 5, 1985.
[3] See R. 2:4-1(a). The issue of the failure to file the appeal within 45 days has not been raised by the State. Appellant's brief was filed February 9, 1988 and the State's brief was filed March 10, 1988.
[4] The sentencing judge noted that the police had observed "red marks on the victim's face, around the mouth and cheek area and she did complain of pains in the left shoulder as a result of the incident." Because of the victim's age and condition her testimony was videotaped, pursuant to court order, at the Somerdale Police Station on October 7, 1980 in the presence of the judge, the prosecutor and defense counsel.
[5] The jury was charged that it could find aggravated assault if it found Adams committed a burglary or an aggravated assault (N.J.S.A. 2C:12-1b(1). The fact that Adams was acquitted of aggravated assault and only convicted of the lesser included offense of simple assault does not affect our conclusion, since inconsistent verdicts in a criminal case do not vitiate an otherwise valid conviction. United States v. Powell, 469 U.S. 57, 64-65, 105 S.Ct. 471, 476-77, 83 L.Ed.2d 461, 468-469 (1984); Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 358-359 (1932); State v. Still, 112 N.J. Super. 368, 373 (App.Div. 1970), certif. den. 57 N.J. 600 (1971). Adams would have been guilty of a burglary even if he had not committed an aggravated assault or an attempted aggravated assault under the facts of this case.
[6] Attempts to commit a first degree offense are graded as second degree offenses, N.J.S.A. 2C:5-4a, except for attempted murder which now remains a first degree offense as a result of the amendment by L. 1986, c. 190, effective December 17, 1986.
[7] Cannel, Title 2C, Comment to N.J.S.A. 2C:14-2 (1987) at 305, refers to the listed crimes as aggravating factors:

Sexual assault during commission of certain other crimes. The aggravating factor in 2C:14-2a(3) is that the sexual assault is committed along with another crime involving risk of serious injury. It is the best example of a provision where there is a presumption of coercion.
[8] The first degree offense was attempted which actually made it a second degree offense here. N.J.S.A. 2C:5-4a. Ironically, the offense would have been of the same degree as second degree sexual assault.
[9] This section was repealed by L. 1978, c. 95 (N.J.S.A. 2C:98-2). Rather than containing a general enhancement provision, the Code now provides for increased penalties on an individual basis for crimes committed while armed. See N.J.S.A. 2C:15-1b.
[10] The State notes in passing that although not given as an instruction to the jury, another basis for charging defendant with attempted aggravated sexual assault might have been the fact that the 79 year old arthritic victim was one the actor knew or should have known was physically helpless. See N.J.S.A. 2C:14-3b; N.J.S.A. 2C:14-2c(2). This was not the charge, however.