# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2871-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ABDUL M. STANBACK,
a/k/a ABDUL STANBAK,
ABDUL M. STANABACH,
and DUL,

     Defendant-Appellant.

_____

Submitted December 15, 2020 – Decided February 9, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 16-08-0633.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lila B. Leonard, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Abdul Stanback was convicted of aggravated sexual assault in the course of a burglary, N.J.S.A. 2C:14-2(a)(3), and third-degree burglary, N.J.S.A. 2C:18-2, and sentenced to a forty-five year extended prison term with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals his convictions and sentence, raising the following points for our consideration:

> POINT I
>
> THE COURT'S INCOMPLETE AND CONFUSING INSTRUCTIONS ON BURGLARY AND AGGRAVATED SEXUAL ASSAULT REQUIRE REVERSAL OF DEFENDANT'S CONVICTIONS.
>
> POINT II
>
> THE Y-STR DNA EVIDENCE AND THE EXPERT'S TESTIMONY ABOUT DEFENDANT "MATCHING" THE Y-STR PROFILE WAS CONFUSING, IRRELEVANT, UNFAIRLY PREJUDICIAL, AND SHOULD HAVE BEEN EXCLUDED. DEFENDANT'S CONVICTIONS MUST BE REVER[S]ED.
>
> A. Testimony About DNA Evidence.
>
> B. The Expert Testimony About The DNA Results Should Have Been Excluded, Or At A Minimum, The Expert Should Not Have Been Allowed To Testify That Defendant

2

"Matched" The DNA Found On The Victim.

POINT III

DEFENDANT'S [FORTY-FIVE]-YEAR NERA SENTENCE IS EXCESSIVE.

We have considered these contentions in light of the record on appeal and the applicable law and affirm defendant's convictions and sentence.

I.

We glean the following facts from the trial record. On December 11, 2015, P.S.[1] woke up at approximately 5:00 a.m. when defendant grabbed her ankles and "pulled [them] all the way up to the ceiling." P.S. noted that it felt like her "neck was being . . . pushed into the bed." P.S. saw defendant's face between her legs and started kicking. In response, defendant "grabbed [her] head and . . . wound it up and snapped [it] . . . over and over." P.S. also testified that defendant twisted her neck harder each time and that he smothered her, and defendant demanded that P.S. "stop fighting."

In fear for her life, P.S. grabbed a handful of hair from defendant's beard because she "wanted to get DNA under [her] fingernails." P.S. also noted that she believed defendant left his DNA on her after he bit her finger. Defendant

---

[1] We use the victim's initials to protect her privacy.

then ordered P.S. to "get on [her] hands and knees" and raped her. P.S. testified that defendant penetrated her vaginally "from behind . . . with his penis[,]" without her consent.

P.S. noted that although "[t]he rape itself was not long," the entire assault lasted over two hours. After defendant stopped, he told P.S. that he "wanted [her] to take a shower." P.S. refused because she thought defendant would "start up again and [she] was going to be dead."

Defendant wiped off his penis with a towel, laid back on her bed, and asked "I'm sorry for raping you and . . . if I promise to never . . . come back again would [she] not call the police[?]" Defendant then left P.S.'s apartment after she explained to him that she was not a "cop caller." Defendant purportedly had a key to P.S.'s apartment, and had been to the residence between five and six times, although a witness for defendant testified that he had frequented the apartment at least forty to fifty times.

Thereafter, P.S. called her friend to tell him what happened because defendant's sexual assault "really messed [her] up and [her] face was all beat up . . . ." P.S. called the police and when they arrived, P.S. provided the officers with the hairs she pulled from defendant's beard, which she had wrapped in a

folded paper towel.  P.S. was then transported in an ambulance to Underwood Hospital.

At the hospital, P.S. was examined by a sexual assault nurse examiner. The nurse testified that P.S. had "numerous areas of tenderness or pain along with injury" which included facial "[r]edness, swelling, tenderness, [and] an abrasion to her lip . . . ."  She further noted that P.S. had an "abrasion to her right wrist, bruising and tenderness to her left rib area[,]" and a bite mark on the left index finger.  The nurse also took buccal, vaginal, cervical, anal, and rectal swabs of P.S. and collected her underwear.  She also took swabs of P.S.'s external injuries, including the bite mark on her left index finger.  These items were then placed into an evidence kit, and subsequently sent to the New Jersey State Police (NJSP) Laboratory for DNA testing along with the defendant's beard hair.

Defendant was later arrested and charged with first-degree aggravated sexual assault during the course of a burglary, N.J.S.A. 2C:14-2(a)(3); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); and fourth-degree possession of a drug without a prescription, N.J.S.A. 2C:35-10.5(e)(2).

A-2871-18

At trial, Dolores Coniglio-Rivera, a forensic scientist with the NJSP, testified regarding the recovered DNA evidence. She stated that she performed short tandem repeat (STR) tests on the provided samples, which she explained was "a short piece of DNA that gets repeated a certain number of times and different people have different numbers of repeats."

Coniglio-Rivera also explained the meaning of the terms source, match, and exclusion. She noted that if a "statistic is [one] in at least [seven] trillion for [African-American, Caucasian, and Hispanic] populations . . . then . . . [the] individual is identified as the [']source['] of the profile." She further stated that "[i]f the statistic does not meet that threshold of [one] in at least [seven] trillion, then . . . the profiles [']match['] each other." Finally, she stated that "[i]f it was not a match and not source identity, then it would be an [']exclusion['] . . . ."

Coniglia-Rivera identified defendant as the source of the beard hairs, which statistically calculated to one in 7.82 sextillion individuals among African-Americans, one in 571 sextillion among Caucasians, and one in 160 sextillion among Hispanics. Also, as to the STR epithelial (skin) fraction from one of the underwear samples, she noted that defendant "matched the minor profile" which statistically occurred in one of twenty-two African-Americans.

A-2871-18

Coniglio-Rivera also explained additional Y-STR testing that she performed, which was identical to the original STR tests with "the only exception being that instead of looking at a bunch of different chromosomes from all across the genome, now it's looking strictly at the Y chromosome[,] so only male DNA."

As to the vaginal sample, she confirmed that the Y-STR profile obtained "matched the profile from [defendant]" but acknowledged that statistically every African-American male would be a match. Regarding the Y-STR epithelial fraction anal sample, Coniglio-Rivera stated defendant "matches the major profile" which was "expected to occur no more frequently than [one] in 413 . . . of the African-American population."

As to the Y-STR sperm fraction external genital sample, she noted that "matched the Y-STR profile from [defendant]" which occurred in approximately one in six African-American males. Further, with respect to the Y-STR testing of P.S.'s index finger, Coniglio-Rivera indicated that the specimen "matched the Y-STR profile of [defendant]" which was statistically found in fifty percent of African-American males. In addition, the Y-STR testing excluded defendant as source from the underwear sample and the cervical swab.

A-2871-18

Following the close of testimony, the judge discussed the proposed jury charges with counsel. The judge noted that he was aware that the model jury charge for aggravated sexual assault during the course of a burglary did not include language found in State v. Cuni, 303 N.J. Super. 584 (App. Div. 1997), aff'd on other grounds, 159 N.J. 584 (1999). Accordingly, the judge included language from the sexual assault force and coercion charge under Model Jury Charges (Criminal), "Sexual Assault (Force/Coercion) (N.J.S.A. 2C:14-2(c)(1))" (rev. Jan. 24, 2005), as it "seemed to be the best way to resolve the Cuni matter . . . ." Defendant did not object to any of the proposed instructions.

The judge instructed the jury on the elements of burglary in the second-degree. In pertinent part, the judge noted that the State was required to prove beyond a reasonable doubt that "defendant entered [P.S's apartment] . . . without permission" and "[u]pon entering[,] the defendant did purposely inflict, attempt to inflict or threaten to inflict bodily injury on [P.S]." The court explained to the jury that "in order for you to find that the defendant acted purposely, the State must prove . . . that it was the defendant's conscious object at the time he . . . unlawfully entered the premises[,] to commit . . . sexual assault."

The judge next instructed the jury on aggravated sexual assault stating:

> In order to convict the defendant of this charge, the State must prove the following elements beyond a

reasonable doubt: One, that the defendant committed an account of sexual penetration with another person without their consent. Two, that the defendant acted knowingly. Three, that the penetration occurred during the commission or attempted commission, whether alone or with one or more other persons, of burglary.

The judge further explained that the State must prove that defendant "committed an act of sexual penetration with [P.S.]." Immediately thereafter, the judge defined physical force as "the commission of the act of sexual penetration without the victim's freely and affirmatively given permission to the specified act of penetration . . . ." The court emphasized to the jury that "[y]ou must decide whether the defendant's alleged act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration."

In addition, the judge explained the definition of burglary in the context of aggravated sexual assault, stating:

> The third element the State must prove beyond a reasonable doubt is the penetration occurred during the commission or attempted commission, whether alone or with one or more persons, of burglary. A person has committed burglary if with the purpose to commit an offense therein, the person enters a structure unless the structure at the time is open to the public or the person is licensed or privileged to enter. Purpose to commit an offense means that the defendant intended to commit an unlawful act in the structure. The unlawful act here is sexual assault.

9

The judge also noted that "[i]f you find the State has failed to prove any of the elements beyond a reasonable doubt, then you must find the defendant not guilty of aggravated sexual assault."

The judge then instructed the jury that to find the defendant guilty of sexual assault, the State must prove that the defendant knowingly "committed an act of sexual penetration with [P.S.]" and used physical force or coercion. The judge reiterated to the jury that he previously instructed them on sexual physical force.

The jury convicted defendant of aggravated sexual assault, count one, and the lesser included offense of burglary in the third degree, N.J.S.A. 2C:18-2. At sentencing, the judge determined that defendant was extended term eligible under N.J.S.A. 2C:43-6.4(e)(1). The judge applied aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"), six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"), and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). The judge also found that the aggravating factors substantially outweighed the non-existent mitigating factors.

With respect to aggravating factor three, the court stated:

> As a juvenile, defendant received diversions for simple assault twice, criminal trespass or defiant trespass and lewdness. He received adjudications for simple assault three times and possession of [a controlled dangerous substance]. In municipal court, the defendant was charged with several ordinance violations, simple assault, littering, criminal mischief, damage to property and resisting arrest. In Superior Court[,] he[ ] received convictions for sexual assault, victim less than [thirteen] and he being [four] years older, special sentence of community supervision for life, violating without good cause twice and registered sex offender, failure to notice [his] change of address. He also received a parole violation. He has pending charges out of Gloucester County Superior Court for aggravated assault on law enforcement, throwing bodily fluids and obstruction.

With respect to aggravating factor six, the judge noted "the extent of the defendant's prior criminal record and the seriousness of the offenses of which he [has] been convicted." Finally, regarding aggravating factor nine, the judge stated that "[t]his factor applies in every case of this type" and it "especially applies due to the fact the defendant is [a] repetitive offender."

The judge further noted that defendant "has demonstrated that he is a true menace to society" and "[u]nless there's [a] substantial change in attitude, the defendant's highly likely to reoffend." The judge concluded that "defendant's

A-2871-18

confinement is required for the adequate protection of society." This appeal followed.

## II.

Defendant argues in his first point that the trial court's "incomplete and confusing jury instructions deprived [him] of his rights to due process and a fair trial and require reversal of his convictions." Specifically, defendant relies on Cuni for the proposition that the court's "instruction on aggravated sexual assault failed to adequately explain that force or coercion was an additional element for aggravated sexual assault" and further failed to "to explain that this element of intending to engage in sexual assault by using force or coercion also applied to the burglary charge." We disagree.

"It is a well-settled principle that appropriate and proper jury charges are essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002). The trial court must provide the jury with "a comprehensible explanation of the questions that [it] must determine, including the law of the case applicable to the facts that the jury may find." State v. Green, 86 N.J. 281, 287-88 (1981). A jury charge sets up a "road map to guide the jury" and must explain the law to the jury in the context of the material facts of the case. Savage, 172 N.J. at 387 (quoting State

v. Martin, 119 N.J. 2, 15 (1990)).  A jury charge must be reviewed in its entirety to determine the overall effect.  State v. Delibero, 149 N.J. 90, 106 (1997).

Where no objection is raised to the instruction, we consider the instructions for plain error and must determine if the instructions were "clearly capable of producing an unjust result."  State v. Alexander, 233 N.J. 132, 141-42 (2018) (quoting R. 2:10-2).  We assess the alleged error here in light of "the totality of the entire charge, not in isolation."  State v. Chapland, 187 N.J. 275, 289 (2006).  While an erroneous jury charge may be a "'poor candidate[ ] for rehabilitation' under the plain error theory,"  State v. Jordan, 147 N.J. 409, 422 (1997) (quoting State v. Simon, 79 N.J. 191, 206 (1979)), we nonetheless consider the effect of any error in light "of the overall strength of the State's case."  Chapland, 187 N.J. at 289.  In addition, the failure to object signifies that "in the context of the trial[,] the [alleged] error was actually of no moment."  State v. Ingram, 196 N.J. 23, 42 (2008) (quoting State v. Nelson, 173 N.J. 417, 471 (2002)).

Here, the trial court clearly and sufficiently charged the jury on burglary, aggravated sexual assault, and sexual assault.  First, the court instructed the jury that to convict defendant of second-degree burglary, it must find that defendant unlawfully entered P.S.'s apartment with the intent to commit a sexual assault.

The judge also stated that the jury could only convict defendant of burglary if it determined that the State established all the elements of burglary, including defendant's intent to commit an unlawful sexual assault, beyond a reasonable doubt.

The court further instructed the jury that to convict defendant of aggravated sexual assault, it must find that during the commission of a burglary, the defendant knowingly committed an act of sexual penetration with another person without that person's consent. The court also defined that physical force in relation to sexual penetration occurs when the victim does not give affirmative permission to the act of sexual penetration. The court then told the jury that it must "decide whether the defendant's alleged act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration." Thereafter, the judge informed the jury that it can only convict the defendant if the State proved all the elements of aggravated sexual assault beyond a reasonable doubt.

Finally, the judge charged the jury that to convict defendant of sexual assault, it had to find that defendant knowingly used physical force or coercion to commit an act of sexual penetration. The judge also informed the jury to use

14

the same definition of physical force he had provided in the aggravated sexual assault charge.

Accordingly, the infirmities that existed in Cuni are absent here. In Cuni, the court upheld the State's theory that the commission of second-degree sexual assault could become burglary, which could then be used as the predicate offense for first-degree aggravated assault. 303 N.J. Super. at 595. The court, however, determined that the judge's charge for aggravated sexual assault "was incomplete because he did not give a complete description of the elements of sexual assault, the underlying crime" and therefore potentially caused jury confusion. Id. at 595, 600.

In this regard, the court found that the charge on aggravated sexual assault was insufficient because the judge "did not explain to the jury that where no violence or force is used other than the sexual penetration, then for the sexual penetration to be a sexual assault, the sexual penetration must occur 'without the affirmative and freely-given permission of the alleged victim.'" Id. at 596 (quoting In re M.T.S., 129 N.J. 422, 448 (1992)). Although the judge instructed the jury on affirmative permission in its charge for sexual assault, the court noted that he "never tied the requirement of affirmative permission" to aggravated sexual assault. Id. at 599.

The court found that this "may have exacerbated the problem" because "[c]harging affirmative permission as to [sexual assault] but not as to [aggravated sexual assault] carries an inference that proving the absence of affirmative permission" was not required for aggravated sexual assault. Ibid. The court noted that this instruction could have led the jury to conclude that consensual sexual penetration was "an aggravated sexual assault if the defendant did not have permission to enter the premises." Ibid.

Similarly, the court found that the judge's charge for burglary could have misled the jury "into reaching an erroneous conclusion that entry without permission with the purpose to commit an act of consensual sexual penetration would alone be sufficient to constitute burglary." Id. at 604. The court determined that the charge was defective because it failed to instruct the jury that the defendant could not be found guilty of burglary if the defendant entered with a purpose to have consensual sexual relations with the victim. Ibid. The court also found that the judge "did not define sexual assault until much later in the charge" and he did not "clearly tie this definition into the burglary charge." Ibid.

Unlike in Cuni, the jury instructions here could not lead the jury to find defendant guilty of aggravated sexual assault or burglary if he entered P.S.'s

16

apartment with the intent to have consensual sex. The court appropriately defined the elements of burglary, aggravated sexual assault, and sexual assault. The court also defined physical force in its charge for aggravated sexual assault and required the jury to determine whether defendant reasonably believed he had affirmative permission to commit the act of sexual penetration. Moreover, the court instructed the jury that it must find that defendant had the intent to commit an act of sexual assault to find him guilty of burglary, and likewise committed a burglary to find him guilty of aggravated sexual assault. Therefore, the jury instructions were correct, and not clearly capable of producing an unjust result. Alexander, 233 N.J. at 141-42.

III.

Defendant next contends that his convictions should be reversed because the admission of Y-STR DNA evidence and Coniglio-Rivera's testimony that defendant "matched" the Y-STR profile was confusing, irrelevant, and unfairly prejudicial. Specifically, defendant maintains that: 1) the probative value of the of the Y-STR DNA tests is outweighed by its likelihood to prejudice the defendant and confuse the jury; and 2) the repeated testimony from Coniglio-Rivera that defendant "matched" the DNA from various swabs was misleading and prejudicial. We are not persuaded by any of these arguments.

17

Again, as defendant never raised these objections during trial, we review the admission of the DNA evidence and the expert's testimony under the plain error standard. See State v. Black, 380 N.J. Super. 581, 593 (App. Div. 2005). We reverse because of plain error only if the error was "clearly capable of producing an unjust result." State v. Ross, 229 N.J. 389, 407 (2017) (quoting R. 2:10-2). Against this standard of review, we reject all of defendant's arguments.

Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Our Rules of Evidence "broadly admit 'all' relevant evidence, unless the evidence is otherwise excluded." State v. Burr, 195 N.J. 119, 126 (2008). Relevant evidence nevertheless may be excluded "if its probative value is substantially outweighed by the risk . . . of undue prejudice [or] confusion of issues . . . ." N.J.R.E. 403(a).

Defendant claims that the Y-STR DNA test results were improperly admitted. We disagree. In State v. Calleia, 414 N.J. Super. 125 (App. Div. 2010), rev'd on other grounds, 206 N.J. 274 (2011), the court noted that that even in circumstances where Y-STR testing could only show that defendant could not be excluded as the source of the sample, such evidence was relevant and admissible.

Here, although the Y-STR results did not prove that defendant was a source, they did establish that defendant could not be excluded from the class of individuals who could have sexually assaulted P.S. For example, Coniglio-Rivera testified that defendant could not be excluded based on the results of the Y-STR testing on the sperm fraction from the vaginal swabs. Moreover, as noted, Coniglio-Rivera testified that the Y-STR results actually excluded defendant as a source from P.S.'s underwear sample and the cervical swab.

Defendant next maintains that Coniglio-Rivera should not have been "allowed to testify that defendant 'matched' the DNA found on the victim." Coniglio-Rivera, however, used this term to explain her detailed statistical findings regarding the DNA evidence and to illustrate the differences between a source, match, and exclusion as those terms are understood in the scientific community. Thus, on this record, there is no discernible reason why the jury would be confused or misled by the repeated use of the word "match" when such terms were thoroughly explained by the expert.

In addition, when viewed in light of the overwhelming evidence of defendant's guilt, including P.S.'s identification of defendant and detailed description of the assault, the nurse's testimony regarding her injuries, and the STR DNA evidence identifying defendant as the source of the beard hairs, we

find that the admission of the Y-STR and Coniglio-Rivera's testimony, even if erroneous, was not capable of producing an unjust result. Ross, 229 N.J. at 407.

IV.

In defendant's final point he argues that his forty-five-year NERA sentence is excessive. Defendant asserts that "[t]he court's errors in finding and weighing [the] aggravating factors, as well as the overall length of the sentence, render it excessive." Regarding the aggravating factors, defendant maintains that the judge: 1) improperly relied on pending charges in his application of aggravating factor three; 2) did not fully explain his application of aggravating factor six; and 3) incorrectly found that aggravating factor nine applies "in every case of this type." Defendant also contends that the burglary charge must merge with the aggravated sexual assault charge. Again, we disagree.

We employ a deferential standard when reviewing a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm a sentence unless: 1) the trial court failed to follow the sentencing guidelines; 2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or 3) "'the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'"

20                                                                          A-2871-18

<u>Fuentes</u>, 217 N.J. at 70 (second alteration in original) (quoting <u>State v. Roth</u>, 95 N.J. 334, 364-65 (1984)).

Here, defendant does not contest the judge's ruling that he was subject to an extended term pursuant to N.J.S.A. 2C:43-6.4(e)(1). As such, on defendant's aggravated sexual assault conviction, he faced a maximum extended term of life imprisonment, N.J.S.A. 2C:43-7(a)(2). The judge's decision to sentence defendant to a forty-five-year term of imprisonment was within the sentencing guidelines.

Defendant's challenges to the court's application of aggravating factors are without merit. Here, after reviewing the presentence report, the judge applied aggravating factors three, six, and nine and found no mitigating factors. The judge also determined that the aggravating factors substantially outweighed the non-existent mitigating factors.

In the judge's findings for aggravating factor three, he noted that defendant had pending charges in Gloucester County for an aggravated assault on law enforcement. In <u>State v. K.S.</u>, our Supreme Court disapproved of the notion that a "sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred . . . from committing a crime thereafter." 220 N.J. 190, 199 (2015) (quoting <u>State v. Green</u>, 62 N.J. 547, 562 (1973)).

Indeed, the Court noted that "deterrence is directed at persons who have committed wrongful acts," not those merely charged. Ibid. Further, a "sentencing judge shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." Green, 62 N.J. at 571.

Here, the judge reviewed defendant's extensive criminal history, including multiple juvenile adjudications and adult convictions. Specifically, the judge found that defendant had previously been convicted of sexual assault on a victim less than thirteen years old when he was four years older. The judge also noted that defendant had been sentenced to community supervision for life, which he violated twice, and that defendant was a registered sex offender. Notwithstanding the judge's reference to defendant's pending charges, there is sufficient competent and credible evidence in the record in support of his application of aggravating factor three.

Although the judge's statement of reasons related to his application of aggravating factor six could have been more detailed, a remand is unnecessary when it is "possible in the context of [the] record to extrapolate without great difficulty the [sentencing] court's reasoning." State v. Pillot, 115 N.J. 558, 566 (1989); State v. Bieniek, 200 N.J. 601, 609 (2010). Here, from our review of

the record we have no "doubt as to the facts and principles the court considered and how it meant to apply them."  Miller, 205 N.J. at 130.

Indeed, it is clear that the judge was aware of defendant's criminal history from his findings in aggravating factor three.  The judge also stated that defendant "has demonstrated that he is a true menace to society" and without reform, he is likely to reoffend.  The judge further noted that defendant's incarceration is necessary for the "adequate protection of society."  Based on the record before us, we are able to "extrapolate without great difficulty," the judge's reasoning regarding the application of aggravating factor six.  Pillot, 115 N.J. at 566.

Finally, despite the judge's statement that aggravating factor nine applied in every case of this type, the judge also expressly found that "defendant is a repetitive offender."  We are convinced that the judge considered the specific facts of this case and adhered to the sentencing guidelines.  The sentence imposed was well within the judge's sentencing discretion and does not shock our judicial conscience.

We also reject defendant's claim that the burglary conviction must be merged into the aggravated sexual assault conviction.  "The doctrine of merger is based on the concept that 'an accused [who] committed only one offense . . .

cannot be punished as if for two.'" State v. Tate, 216 N.J. 300, 302 (2013) (quoting State v. Davis, 68 N.J. 69, 77 (1975)).  In enacting N.J.S.A. 2C:14-2(a)(3), the legislature "intended the crime of aggravated sexual assault to be separate and distinct from the underlying offenses." State v. Cole, 120 N.J. 321, 332 (1990); see also State v. Adams, 227 N.J. Super. 51, 66-67 (App. Div. 1988) ("The harm from the attempted aggravated sexual assault is of a different nature from that involved in the burglary . . . .  The fact that it is committed during the course of one of the crimes enumerated in N.J.S.A. 2C:14-2(a)(3) only enhances the potential risk of harm to the victim.").

Similar to Adams, defendant here was convicted of both aggravated sexual assault and burglary.  Although burglary is a statutory element of aggravated sexual assault, the two convictions should not be merged, as the crimes represent distinct harms to the victim.  Accordingly, the judge properly decided to sentence defendant to a five-year term of imprisonment for burglary, concurrent to his sentence for aggravated sexual assault.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2871-18