576 A.2d 864

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. NELSON COLE, DEFENDANT–APPELLANT.

Argued January 17, 1990—Decided July 23, 1990.

*Philip L. Maier,* Designated Counsel, argued the cause for appellant (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

*Nelson Cole* submitted supplemental briefs *pro se.*

*Richard W. Berg,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

A jury found Nelson Cole guilty of aggravated assault, *N.J.S.A.* 2C:12–1b(1); kidnapping, *N.J.S.A.* 2C:13–1b; robbery, *N.J.S.A.* 2C:15–1; and aggravated sexual assault, 2C:14–2a(3). The trial court did not merge those convictions, and imposed separate sentences for each offense. The sole issue on this appeal is whether defendant's convictions for robbery, aggravated assault, and kidnapping merge with his conviction for aggravated sexual assault. We hold that they do not.

## I

At approximately 5:00 p.m. on August 8, 1985, a woman drove to Morgan's tavern in Mine Hill, New Jersey, to sell jewelry to an acquaintance. A man later identified as defendant Nelson Cole, approached the woman and forced his way into the passenger seat of her car. When the woman threatened to scream, Cole grabbed her hair, pulled her head back, and placed a sharp object against her neck. He ordered her to drive to a wooded area near a deserted warehouse.

When they arrived, he momentarily freed her in order to search her glove compartment, at which point the victim began screaming and attempted to escape. Cole grabbed her and began beating her face with his closed fist. She continued to scream. Defendant then grabbed her by her hair and slammed her body against the car. He forced her into the driver's seat and began choking her. He threatened to kill her if she did not stop screaming. Defendant ordered the victim to take off her blouse. When she would not do so, he ripped off her blouse and wiped off the inside of the car with it. He then drove further into the woods.

Cole ordered the victim to get out of the car. She offered him a small change purse, containing one hundred and fifty dollars. He knocked it out of her hands, and later picked it up and put it in his pocket. He ordered the victim to remove a case of jewelry, a bag containing her lunch, and articles of clothing from her car and to carry them further into the woods. Defendant then ordered the victim to take off her pants. When she begged him not to make her take them off, defendant knocked her down again and started to hit her in the face. He then tore off her pants, and raped and sodomized her. The victim screamed from the intense pain. Holding her religious medals, she started to pray. Her actions incensed defendant, and he tore the necklace from her neck and threw it into the woods.

Defendant told the victim to pick up her things and to follow him further into the woods. He then raped and sodomized her a second time. He then requested that the victim perform fellatio. When she tried to escape, defendant knocked her down and beat her. The victim passed out. When she regained consciousness, defendant threw some of her personal items into the woods, ordered her to pick up the purse and jewelry box, and walked her back to the car. He allowed her to put on a pair of pants that she had in the trunk of her car.

Cole ordered the victim to drive and made her promise that she would not tell anyone what had happened. She drove him back to his house, and at approximately 8:00 p.m., almost three hours after her ordeal began, he left her car. The victim returned to Morgan's Tavern and reported the incident to police. Shortly thereafter, the police arrested Nelson Cole.

As a result of Cole's brutal attack, the victim was hospitalized for eight days. Her injuries included abrasions to her entire body, a fractured jaw, and bruised kidneys. She suffered lacerations to her rectum as the result of the forced insertion of a bottle of nail polish. She also sustained a severe cerebral concussion.

At trial, the State produced overwhelming evidence of defendant's guilt. The victim testified and identified Cole as her assailant. The police related that they had found an ice scraper, believed to be the "sharp object" placed at the victim's throat, and $134.00 scattered near the fence where defendant had been captured. Forensic evidence established that the defendant's fingerprints matched those found in the victim's car. Material from the victim's fingernails and car matched fibers from defendant's shirt. Blood consistent with defendant's was found on the victim's shirt.

The jury found defendant guilty of aggravated assault, kidnapping, terroristic threats, aggravated sexual assault, and robbery. The jury acquitted defendant of possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4d. Defen-

dant was sentenced to a custodial term of ten years on the aggravated assault conviction, one-half of which must be served without parole eligibility; a concurrent ten-year term on the kidnapping conviction; a consecutive twenty-year term on the aggravated sexual assault conviction, one-half of which is to be served without parole eligibility; and a consecutive ten-year term on the robbery conviction, five years of which must be served without parole eligibility. The court merged the terror-istic threat offense into the aggravated assault and robbery convictions. In sum, defendant was sentenced to forty years with twenty years parole ineligibility. Additionally, the court assessed defendant $100 in penalties payable to the Violent Crimes Compensation Board.

On appeal, defendant argued that his robbery, aggravated assault, and kidnapping convictions are lesser-included offenses of aggravated sexual assault and thus should have merged into his aggravated sexual assault conviction. In rejecting that argument, the Appellate Division found that the facts clearly indicated that defendant engaged in conduct constituting viola-tions of different criminal statutes, thus militating against merger. It explained that *N.J.S.A.* 2C:14–2a(3) is an "enhance-ment" feature, reflecting a legislative recognition of an addi-tional threat of harm to the victim, and hence a greater penalty exposure. Moreover, the court reasoned that the survival of only one crime would actually diminish defendant's exposure to punishment. Accordingly, the Appellate Division held that the offenses did not merge, and affirmed defendant's conviction and sentence.

We granted certification, 114 *N.J.* 508, 555 *A.*2d 625 (1989), limited to the issue of whether defendant's convictions for robbery, aggravated assault and kidnapping merge with his conviction for aggravated sexual assault.

II

Merger stems from the well-settled principle that " 'an accused [who] has committed only one offense * * * cannot be

punished as if for two.' " *State v. Miller,* 108 *N.J.* 112, 116, 527 *A.*2d 1362 (1987) (citing *State v. Davis,* 68 *N.J.* 69, 77, 342 *A.*2d 841 (1975)). *See State v. Truglia,* 97 *N.J.* 513, 522, 480 *A.*2d 912 (1984); *State v. Adams,* 227 *N.J.Super.* 51, 58, 545 *A.*2d 798 (App.Div.), *certif. denied,* 113 *N.J.* 642, 552 *A.*2d 167 (1988); *State v. Fraction,* 206 *N.J.Super.* 532, 537, 503 *A.*2d 336 (App.Div.1985), *certif. denied,* 104 *N.J.* 434, 517 *A.*2d 426 (1986). Although we have not determined whether that prohibition rests on principles of double jeopardy, due process or some other legal tenet, *State v. Davis, supra,* 68 *N.J.* at 76, 342 *A.*2d 841, we acknowledge that merger implicates a defendant's substantive constitutional rights. *State v. Miller, supra,* 108 *N.J.* at 116, 527 *A.*2d 1362.

Beginning with *State v. Davis, supra,* we have eschewed technisms and inflexibility when resolving merger issues. 68 *N.J.* at at 81, 342 *A.*2d 841 (citing *State v. Currie,* 41 *N.J.* 531, 539, 197 *A.*2d 678 (1964)). In *Davis,* defendant was convicted in a single prosecution for several counts of possession and for distribution of a controlled dangerous substance. He argued that the possession counts should have merged with those involving the sales. We first considered whether the legislature intended to create separate offenses:

> We start with the proposition that what is disallowed is double punishment for the same offense. Since it is the legislative branch that defines the unit of prosecution or "offense" and ordains its punishment, we must first determine whether the legislature has in fact undertaken to create separate offenses * * *.
>
> [68 *N.J.* at 77–78, 342 *A.*2d 841 (citations omitted).]

Although finding that the history of New Jersey's Controlled Dangerous Substance Act indicated that the Legislature clearly intended possession and distribution to be separate offenses, *id.* at 78, 342 *A.*2d 841, we continued our analysis, explaining that

> determination of the statute's purposes as revealed in the legislative history does not end the examination of what is the "same offense." Were the legislature, in attempting to create separate crimes, to do no more than simply apply different labels to what in fact is the same charge, it would plainly exceed its authority.
>
> [*Id.* at 80, 342 *A.*2d 841.]

We thus rejected a mechanical application of the definitional analysis in favor of "considerations of 'fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals.'" *Id.* at 81, 342 *A.*2d 841 (quoting *State v. Currie, supra,* 41 *N.J.* at 539, 197 *A.*2d 678). That approach requires an

> analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending of the circumstances of the particular case. * * * In reality we are simply reflecting, in the context of these cases, on the traditional determination of sufficiency of proofs.
>
> [*Id.* at 81–82, 342 *A.*2d 841 (footnote omitted).]

Finding that possession and distribution were distinct criminal offenses, we held that Davis' sentences did not merge. *Id.* at 82–83, 342 *A.*2d 841.

█ We have continued to follow *Davis'* flexible approach in resolving merger issues. *State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 107–08, 557 *A.*2d 277 (1989); *State v. Miller, supra,* 108 *N.J.* at 116, 527 *A.*2d 1362; *State v. Truglia, supra,* 97 *N.J.* at 520–21, 480 *A.*2d 912; *State v. Mirault,* 92 *N.J.* 492, 501, 457 *A.*2d 455 (1983). That approach requires us to focus on "the elements of crime and the Legislature's intent in creating them," and on "the specific facts of each case." *State v. Miller, supra,* 108 *N.J.* at 116–17, 527 *A.*2d 1362. In determining legislative intent, we analyze the statutes to determine whether the Legislature intended to protect different interests, and whether merger makes sense in the context of the Code's overall sentencing scheme. We also consider the specific elements of the offenses in light of the New Jersey Code of Criminal Justice (Code) merger provision, *N.J.S.A.* 2C:1–8, which provides:

> a. *Prosecution for multiple offenses; limitations on convictions.* When the same conduct of a defendant may establish the commission of more than one

offense, the defendant may be prosecuted for each offense. He may not, however, be convicted of more than one offense if:

(1) One offense is included in the other, as defined in subsection d. of this section;

\* \* \* \* \* \* \* \*

d. \* \* \* An offense is so included when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged.

\* \* \* \* \* \* \* \*

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

Both the commentary to the New Jersey Penal Code and the comment to the Model Penal Code, on which the New Jersey provision was modeled, suggest that the Code embraces an "elements" test. *See II Final Report of the New Jersey Criminal Law Revision Commission Commentary,* § 2C:1–7 at 25 ("A lesser offense is necessarily included in a charge of the greater offense if the proof necessary to establish the greater offense will of necessity establish every element of the lesser offense."); *American Law Institute, Model Penal Code and Commentaries,* § 1.07 at 130 (1985) ("Under this approach, a lesser included offense is included in a greater if all the statutory elements of the lesser are also elements of the greater."). *See also State v. Fraction, supra,* 206 *N.J.Super.* at 538, 503 *A.*2d 336 (suggesting that the Code has adopted an "elements" test).

Hence, we approach merger issues guided by the Code, yet maintaining our constitutional and common law principles. *See State v. Miller, supra,* 108 *N.J.* at 117 n. 2, 527 *A.*2d 1362; *State v. Mirault, supra,* 92 *N.J.* at 502 n. 10, 457 *A.*2d 455 ("The Code \* \* \* mirrors [this] judicial analysis"). For example, in *State v. Mirault, supra,* defendant assaulted a police officer who confronted him while responding to a report of burglary. We held that the defendant's conviction for aggravated assault should merge with his conviction of first degree robbery. Central to our analysis was our finding that "under

the particular facts of this case, the legislative scheme does not contemplate separate convictions." 92 *N.J.* at 504, 457 *A.*2d 455. Relying on the *Davis* principles, we also observed that "the proofs to sustain ... [both convictions] were identical," *id.* 92 *N.J.* at 503, 457 *A.*2d 455, in that the same physical acts gave rise to the distinct grade of both offenses. *Id.* at 504, 457 *A.*2d 455.

We continued, however, that if the conviction for aggravated assault had been based on *N.J.S.A.* 2C:12–1b(5), assault on a law-enforcement officer, our merger considerations would have been different. *Id.* at 505, 457 *A.*2d 455. We noted that in that instance, "the legislative concern for the status of the police may well evidence a specific legislative intent to fractionalize the offense." *Id.* at 506, 457 *A.*2d 455. Moreover, we noted that there would be an additional fact or element to prove— "the status of the victim as a police officer," *id.* at 505–06, 457 *A.*2d 455—suggesting that the Code's merger test would be satisfied.

Subsequently in *State v. Miller, supra,* we held that a conviction for aggravated sexual assault did not merge with a conviction for child endangerment. Synthesizing common law principles with the Code merger provisions, 108 *N.J.* at 117 n. 2, 527 *A.*2d 1362, we noted that

> merger may be improper even where a single course of conduct constitutes a violation of two different criminal statutes. The factor critical to the merger decision in this case stems *from the different interests protected by the statute violated.*
> [*Id.* at 118, 527 *A.*2d 1362 (emphasis added).]

After reviewing the elements of each offense, we reasoned that the offenses are different "because the crime of endangering the welfare of a child is aimed not only at specific conduct but also at the violation of the duty that a parent owes to a child." *Id.* at 118–19, 527 *A.*2d 1362.

Addressing *Davis'* emphasis on the specific evidence offered, we also observed that the State had proffered evidence of various criminal acts committed during the course of the week-

end, and hence the "proofs in [the] record suggest that merger is inappropriate." *Id.* 108 *N.J.* at 120, 527 *A.*2d 1362. Moreover, we found that the "consequences of the criminal standards transgressed were not the same," *State v. Davis, supra,* 68 *N.J.* at 81, 342 *A.*2d 841, in that merger would not adequately redress the profound injury suffered by the victim, because the sexual assault had also resulted in a "perversion of the parent-child relationship." *Id.* 108 *N.J.* at 120, 527 *A.*2d 1362.

With these common-law principles and the Code as background, we now consider whether the offenses at issue should merge.

### III

■ The evidence supports three possibilities that could raise defendant's conviction for sexual assault to aggravated sexual assault. Specifically, the record reveals that the sexual assaults were "committed during the commission ... of robbery, kidnapping ... [or] aggravated assault," *N.J.S.A.* 2C:14–2a(3); defendant used "physical force or coercion and severe personal injury [was] sustained by the victim," *N.J.S.A.* 2C:14–2a(6); and defendant was "armed with a weapon ... and threatened by word or gesture to use [it]," *N.J.S.A.* 2C:14–2a(4). The trial court, however, charged the jury with respect to *N.J.S.A.* 2C:14–2a(3),[1] a sexual assault during the commission of a robbery, kidnapping or aggravated assault, and hence the jury's verdict was necessarily predicated on that possibility. To determine whether those underlying convictions merge with defendant's conviction for aggravated sexual assault, we first consider whether the legislature intended to create separate offenses. *See State v. Davis, supra,* 68 *N.J.* at 77–78, 342 *A.*2d 841.

---

[1] The trial court also charged the jury with respect to *N.J.S.A.* 2C:14–2a(4), that defendant was armed with a weapon. Since the jury acquitted defendant of the weapons offense, *N.J.S.A.* 2C:39–4d, we discount the possibility that the jury's verdict was premised on that aggravating circumstance.

The Code sets forth six categories of sexual assault that are "aggravated," elevating them to crimes of the first degree:

An actor is guilty of *aggravated sexual assault* if he commits an act of *sexual penetration* with another person under any one of the following circumstances:

(1) The victim is less than 13 years old;

(2) The victim is at least 13 but less than 16 years old; and

(a) The actor is related to the victim by blood or affinity to the third degree, or

(b) The actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status, or

(c) The actor is a foster parent, a guardian, or stands in loco parentis within the household;

(3) *The act is committed during the commission, or attempted commission, whether alone or with one or more other persons, of robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape;*

(4) The actor is armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object;

(5) The actor is aided or abetted by one or more other persons and either of the following circumstances exists:

(a) The actor uses physical force or coercion, or

(b) The victim is one whom the actor knew or should have known was physically helpless, mentally defective or mentally incapacitated;

(6) The actor uses physical force or coercion and severe personal injury is sustained by the victim.

[*N.J.S.A.* 2C:14–2a (emphasis added).]

Each category of aggravated sexual assault focuses on an act of penetration—under six alternative sets of circumstances. *See* Cannel, *New Jersey Code of Criminal Justice*, Comment 1, § 2C:14–2 at 291 (1989) [hereinafter Cannel]. Although protecting distinct interests, all six categories are elevated to crimes of the first degree because of the severity of the harm inflicted on the victim. The Code commentary states that "[t]he aggravating factor in 2C:14–2a(3) is that the sexual assault is committed along with another crime involving risk of serious injury. It is the best example of a provision where there is a presumption of coercion." Cannel, *supra*, Comment 2, § 2C:14–2 at 293. Likewise, *N.J.S.A.* 2C:14–2a(4), the actor is armed with a weapon and threatens the victim, and *N.J.S.A.* 2C:14–2a(6), the actor uses severe force and the victim sustains severe injury, also

illustrate that the legislature intended to punish most severely those defendants who threaten a victim with the greatest amount of harm during an act of sexual penetration.

Viewed in that context, it is clear that the legislature, in enacting *N.J.S.A.* 2C:14–2a(3), intended the crime of aggravated sexual assault to be separate and distinct from the underlying offenses. In our view, those underlying offenses are "aggravating factors," raising the degree of the crime and hence, increasing the penalty exposure for the particular sexual assault. As the Appellate Division reasoned in *State v. Adams, supra,* in analyzing this statutory provision:

> We view the listed additional offenses and circumstances in *N.J.S.A.* 2C:14–2a(1) through (6) as enhancement features which raise the *degree* of the crime. They are enhancement features because each in its own way reflects a legislative recognition of an additional threat of physical or psychological harm to the victim, over and above the act of sexual violence. They thus authorize increased punishment because of the increased risk of harm to the victim when the sexual assault or attempted offense is committed in connection with any one or more of the specified other offenses, thus becoming "aggravated."
> [227 *N.J.Super.* at 61, 545 *A.*2d 798.]

In *State v. Miller, supra,* we emphasized that the "factor critical to the merger decision ... stems from the different interests protected by the statutes violated." 108 *N.J.* at 118, 527 *A.*2d 1362. A review of the offenses at issue discloses the separate interests protected by each statute. The aggravated sexual assault statute, with its focus on penetration, seeks to protect the victim from an act of sexual defilement, under six defined aggravated circumstances, *N.J.S.A.* 2C:14–2a(1)–(6). On the other hand, the kidnapping statute seeks to protect the victim from unlawful removal or confinement. *N.J.S.A.* 2C:13–1. *See State v. La France,* 117 *N.J.* 583, 590, 569 *A.*2d 1308 (1990). By comparison, the robbery statute, *N.J.S.A.* 2C:15–1, is designed to protect the victim from theft under violent or life-threatening circumstances. *See State v. Mirault, supra,* 92 *N.J.* at 496, 457 *A.*2d 455. Finally, the aggravated-assault statute, *N.J.S.A.* 2C:12–1b, seeks to protect the victim from the most serious form of bodily injury. See *State v. Jones,* 214 *N.J.Super.* 68, 73, 518 *A.*2d 496 (App.Div.1986). Merger, there-

fore, is inappropriate because the Legislature, in creating distinct offenses, intended to protect separate interests, by imposing separate and distinct punishment for separate and distinct offenses.

In our search for legislative intent in deciding merger issues, we have also examined the Code's sentencing scheme. In *State v. Mirault, supra,* we observed that "[o]ne of the salient features of the Code is its emphasis on sentencing as an integral part of the criminal disposition process." 92 *N.J.* at 505, 457 *A.*2d 455 (citing *State v. Des Marets,* 92 *N.J.* 62, 455 *A.*2d 1074 (1983)). Merger of defendant's convictions here would frustrate the Code's sentencing scheme. For example, a defendant convicted of second degree sexual assault and first degree kidnapping would be eligible for a maximum term of forty years—thirty for the kidnapping, *N.J.S.A.* 2C:13–1c, and ten for the sexual assault, *N.J.S.A.* 2C:43–6. The effect of the enhancement provision is to make the sexual assault committed during the course of a kidnapping a first degree crime. If the kidnapping were to merge, defendant would be subject to only twenty years imprisonment. Similarly, a defendant who committed a sexual assault in the course of a robbery would be eligible under the Code for a ten year sentence with five years parole ineligibility for the robbery and a consecutive ten year sentence for the second-degree sexual assault. The enhancement provision of *N.J.S.A.* 2C:14–2a would cause the sexual assault to be treated as a first-degree crime, with a maximum exposure of twenty years and ten years parole ineligibility. However, if the robbery is merged with the aggravating sexual assault, the enhanced sentencing authorized by the Legislature would not increase the defendant's exposure to imprisonment. We cannot attribute such a poorly-designed scheme to our Legislature.

Legislative intent is expressed not only in the Code's sentencing scheme, but in the Code merger provision, *N.J.S.A.* 2C:1–8(d)(1). Mindful that no single test is dispositive, we approach the Code's "elements" merger provision, guided by *Davis'*

adherence to flexibility. We recognize that if the elements of aggravated sexual assault are examined in the context of a specific underlying offense which, in combination with sexual penetration, constitutes the enhanced offense, it can fairly be concluded that the specific underlying offense relied on is established by proof of the same facts required to prove the greater offense. In this case, the Code merger provision is used only to determine defendant's sentence. To strictly apply the elements test and merge Cole's convictions, would frustrate the legislative intent as expressed in the Code's sentencing scheme—a course we hesitate to follow. *See N.J.S.A.* 2C:1-2(c) ("The provisions of the Code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved").

Under *State v. Truglia, supra,* we also focus on the "episodic fragments of the events," 97 *N.J.* at 521, 480 *A.*2d 912, considering the specific proofs offered to establish the offenses. Here, the victim's three-hour ordeal included repeated and distinct acts of robbery, aggravated assault, and sexual assault. Specifically, the state's proofs suggest that at least three separate aggravated assaults occurred: (1) when she tried to escape near the warehouse; (2) when defendant initially took her into the woods; (3) when defendent demanded that she perform fellatio. Also, more than one robbery occurred: (1) the taking of her change purse; (2) the removal of her jewelry box and personal items from the car. Hence, there was sufficient evidence to support the convictions for aggravated sexual assault, on proofs separate and distinct from the proofs necessary for the kidnapping, robbery, and aggravated assault convictions. *See State v. Miller, supra,* 108 *N.J.* at 120, 527 *A.*2d 1362. Thus, insofar as *Davis* and *Truglia* require an analysis of the specific proofs, we find that merger is not required.

Finally, when we consider the "consequences of the criminal standards transgressed," *State v. Davis, supra,* 68 *N.J.* at 81,

342 *A.*2d 841, we are convinced that defendant's offenses should not merge. *See State v. Miller, supra,* 108 *N.J.* at 120, 527 *A.*2d 1362. In our view, merger would not adequately redress the profound and distinct injuries suffered by this victim during an almost three hour period of captivity. During that ordeal she was repeatedly raped, sodomized, robbed, and brutally assaulted to the point of unconsciousness. Nelson Cole's separate sentences for aggravated sexual assault, robbery, kidnapping and aggravated assault address each of those separate injuries. Hence, we find that merger of defendant's convictions is inappropriate.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices GARIBALDI, CLIFFORD, HANDLER, POLLOCK, O'HERN, and STEIN—7.

*Opposed*—None.