NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4815-13T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

LAMAR G. FIELDS, a/k/a
LOMONT FIELDS,

 Defendant-Appellant.
________________________________________

 Submitted March 28, 2017 – Decided May 11, 2017

 Before Judges Yannotti, Gilson and
 Sapp-Peterson.

 On appeal from Superior Court of New Jersey,
 Law Division, Hudson County, Indictment No.
 11-03-0404.

 James R. Lisa, attorney for appellant.

 Esther Suarez, Hudson County Prosecutor,
 attorney for respondent (Eric P. Knowles,
 Assistant Prosecutor, on the brief).

PER CURIAM

 A Hudson County grand jury returned Indictment No. 11-03-

0404, charging defendant with eight counts of first-degree

aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(a)(4), and
numerous other charges arising from acts committed on September

3, 2010, and September 24, 2010. The charges were severed and

tried separately. Defendant was convicted on numerous counts, and

the court sentenced defendant to an aggregate term of life

imprisonment, plus sixty years, with periods of parole

ineligibility prescribed by the No Early Release Act (NERA),

N.J.S.A. 2C:43-7.2. Defendant appeals from the judgments of

conviction dated May 15, 2013, and May 2, 2014. We affirm.

 I.

 Defendant was charged with first-degree aggravated sexual

assault upon S.B., while armed with a weapon, N.J.S.A. 2C:14-

2(a)(4) (count one); third-degree criminal restraint of S.B., with

risk of serious bodily injury, N.J.S.A. 2C:13-2(a) (count two);

third-degree possession of a weapon for an unlawful purpose,

N.J.S.A. 2C:39-4(d) (count three); fourth-degree unlawful

possession of a weapon, N.J.S.A. 2C:39-5(d) (count four); third-

degree making terroristic threats to S.B., N.J.S.A. 2C:12-3(b)

(count five); first-degree aggravated sexual assault upon S.B.,

while armed with a weapon, N.J.S.A. 2C:14-2(a)(4) (counts six,

seven, and eight); first-degree aggravated sexual assault upon

S.B., during the commission of a burglary, N.J.S.A. 2C:14-2(a)(3)

(counts nine, ten, eleven, and twelve); second-degree burglary,

N.J.S.A. 2C:18-2(a) (count thirteen); first-degree aggravated

 2 A-4815-13T3
sexual assault upon L.L., while armed with a weapon, N.J.S.A.

2C:14-2(a)(4) (counts fourteen, nineteen, and twenty-nine); third-

degree criminal restraint of L.L., with risk of serious bodily

injury, N.J.S.A. 2C:13-2(a) (count fifteen); third-degree

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-

4(d) (count sixteen); first-degree robbery, N.J.S.A. 2C:15-1(a)(1)

(count seventeen); fourth-degree child abuse, cruelty, or neglect,

involving L.L., N.J.S.A. 9:6-1 and 9:6-3 (count eighteen); third-

degree criminal restraint of S.L., with risk of serious bodily

injury, N.J.S.A. 2C:13-2(a) (count twenty); third-degree

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-

4(d) (count twenty-one); first-degree armed robbery, N.J.S.A.

2C:15-1(a)(1) (count twenty-two); second-degree burglary, N.J.S.A.

2C:18-2(a)(1) (count twenty-three); third-degree making

terroristic threats to L.L. and S.L., N.J.S.A. 2C:12-3(b) (count

twenty-four); fourth-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-5(d) (count twenty-five); first-degree

aggravated sexual assault upon L.L., N.J.S.A. 2C:14-2(a)(3)

(counts twenty-six and twenty-seven); third-degree aggravated

criminal sexual contact with S.L., during the commission of a

burglary or robbery, N.J.S.A. 2C:14-3(a) (count twenty-eight);

first-degree aggravated sexual assault upon S.L. during the

commission of a burglary or robbery, N.J.S.A. 2C:14-2(a)(3)

 3 A-4815-13T3
(counts thirty and thirty-two); and first-degree aggravated sexual

assault upon S.L., while armed with a weapon, N.J.S.A. 2C:14-

2(a)(4) (count thirty-one).

 The trial court severed the charges in counts one to thirteen,

which pertained to S.B., and the charges in counts fourteen to

thirty-two, which pertained to S.L. and L.L. The court conducted

separate trials on the severed charges.

 A. The Trial on Counts Fourteen to Thirty-Two

 We briefly summarize the evidence presented at the first

trial. On September 24, 2010, L.L. was in the kitchen of a single-

family home in Jersey City, where she resided with her mother,

S.L. L.L. was seventeen-years old at the time. She heard the rear

screen door open, and she was confronted by a black male, who she

described as about five feet, eleven inches tall.

 L.L. began to scream. She wound up on the floor, with the

intruder standing or kneeling above her, trying to stop her from

screaming. The intruder grabbed a fork that L.L. was using to

prepare food, and he raised it over her so she would stop

screaming. S.L. was upstairs and heard L.L.'s screams. She came

downstairs and entered the kitchen. S.L. was then sixty-five years

old.

 The intruder asked S.L. and L.L. for money, and L.L. gave him

ten dollars. He took the money, but he was not satisfied. S.L.

 4 A-4815-13T3
offered to take him to a cash machine to withdraw more money. The

intruder slapped S.L. in the face. He told her not to look at him

or he would kill her if she did not do as she was told. He reached

into his pocket. S.L. testified that it appeared as if he had a

gun. The intruder ordered S.L. and L.L. to go to the living room,

and made them remove their clothes. He placed his penis in S.L.'s

mouth for several minutes. Then, he led S.L. and L.L. to the second

floor of the house and directed them to L.L.'s bedroom. He had

S.L. and L.L. lie down on their stomachs.

 The intruder had S.L. and L.L. perform fellatio upon him, and

he penetrated L.L.'s vagina with his penis. He also placed his

fingers in S.L.'s vagina and he touched her breast. He apparently

was unable to achieve sexual satisfaction and did not ejaculate.

After he committed these acts, the intruder asked S.L. and L.L.

if they had any televisions, cameras, or computers in the house.

He took a laptop, camera, cellphone, and a canvas bag to carry

these items. The intruder and the victims returned to the kitchen.

He told S.L. and L.L. he would murder them if they told anyone

what had happened.

 The intruder left the house, and S.L. called 9-1-1. Officers

from the Jersey City Police Department (JCPD) arrived, and the

victims were taken to the hospital, where they were treated. A

physical exam of L.L. noted cuts and tears to her vagina.

 5 A-4815-13T3
 Investigators from the Hudson County Prosecutor's Office

(HCPO) retrieved evidence from the scene, including five latent

fingerprints from the door handle, a fork, a battery, a cardboard

box, and the screen door. The State presented expert testimony,

which indicated that defendant's fingerprint matched a latent

fingerprint recovered from the scene.

 The HCPO's investigators interviewed S.L. and L.L. They were

each shown a photo array, which included defendant's photo. S.L.

identified defendant as the perpetrator, but L.L. was not able to

identify defendant. At the trial, S.L. provided an in-court

identification of defendant as the individual who committed the

sexual assaults and other offenses.

 An officer from the JCPD contacted defendant's mother to ask

about defendant's whereabouts. A warrant for defendant's arrest

was issued, and on September 29, 2010, he was arrested in Brooklyn,

New York. Defendant was thereafter returned to New Jersey. He told

a detective from the HCPO that he did not rape anyone. Among other

statements, defendant said, "[t]hese girls are just tricks that

are mad because I fucked them and I didn't pay them."

 Defendant did not testify on his own behalf but presented

testimony from his mother, who had moved from Jersey City to Newark

several years earlier. She said that her daughter still resides

in Jersey City. She recalled seeing defendant in September 2010

 6 A-4815-13T3
because her daughter's birthday is September 23, 2010. She stated

that she was not sure defendant attended the birthday party, but

conceded that he might have been there.

 The jury found defendant guilty on counts fourteen and twenty-

nine (aggravated sexual assault upon L.L. while armed); sixteen

(possession of a weapon for an unlawful purpose); seventeen (armed

robbery); eighteen (child abuse); nineteen (aggravated sexual

assault of S.L. while armed); twenty-two (armed robbery); twenty-

three (burglary); twenty-four (terroristic threats); twenty-five

(unlawful possession of a weapon); twenty-six, twenty-seven, and

thirty (aggravated sexual assault upon L.L. in connection with the

commission of a burglary or robbery); twenty-eight (aggravated

criminal sexual contact with S.L. in connection with the commission

of a burglary or robbery); thirty-one (aggravated sexual assault

upon S.L. while armed); and thirty-two (aggravated sexual assault

upon S.L. in connection with the commission of a burglary or

robbery). The jury found defendant not guilty on counts fifteen

and twenty (criminal restraint); and twenty-one (possession of

weapon for an unlawful purpose).

 The trial judge denied defendant's motion for a new trial,

and granted the State's motion for imposition of an extended-term

sentence pursuant to N.J.S.A. 2C:44-3(a) as a persistent offender.

The judge sentenced defendant to an extended term of life

 7 A-4815-13T3
imprisonment on count fourteen, and consecutive twenty-year

sentences on counts seventeen and nineteen, with periods of parole

ineligibility as prescribed by NERA. The judge imposed concurrent

sentences on the other counts.

 The judge also ordered defendant to register as a sex offender

pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23; ordered defendant

to comply with Nicole's Law, N.J.S.A. 2C:14-12; imposed parole

supervision for life; and required defendant to pay appropriate

fines and penalties. The judge entered a judgment of conviction

dated May 15, 2013. On June 12, 2013, defendant filed a notice of

appeal.

 B. The Trial on Counts One to Thirteen

 We briefly summarize the evidence presented at the second

trial. S.B. had been asleep in her basement apartment in Jersey

City. She heard the bedroom door move and she went to investigate.

A black male put a knife to her throat, put his hand over her

mouth, and told her not to scream.

 S.B. stated that the man pushed her onto her bed and tore her

clothes off. He penetrated her vagina and anus with his penis.

According to S.B., the man ejaculated in her vagina. He left the

apartment, but S.B. remained in the bedroom. She was scared because

he told her that if he saw her outside, he would kill her.

 8 A-4815-13T3
 After the incident, S.B. visited the offices of the Division

of Child Protection and Permanency (DCPP), and informed a

caseworker that she had been raped. She said that someone had

entered her basement apartment through a window. S.B. did not,

however, see the face of the person who assaulted her. S.B. was

taken to a hospital, where she was examined.

 An officer from the JCPD responded to the hospital. S.B.

described her attacker. She said he was five feet, two inches

tall, and was wearing blue jeans and a white t-shirt. She did not

know the person who attacked her. He came into the apartment, put

a knife to her throat, threatened her, and sexually assaulted her.

A detective from the HCPO went to S.B.'s apartment to investigate.

The detective recovered three latent fingerprints from the window

in the kitchen/living room area.

 Another detective from the HCPO showed S.B. two photo arrays,

one with defendant's photo and one without. S.B. was unable to

identify defendant from the photo array with his picture. The

State presented expert testimony indicating that defendant's

fingerprint matched a latent fingerprint recovered from S.B.'s

apartment. A physical examination of S.B. indicated that she had

vaginal tearing.

 The jury found defendant guilty on counts one and six

(aggravated sexual assault while armed with a weapon); two

 9 A-4815-13T3
(criminal restraint); five (terroristic threats); nine and ten

(aggravated sexual assault during the commission of a burglary);

and thirteen (burglary).

 The jury found defendant not guilty on counts three

(possession of a weapon for an unlawful purpose); four (unlawful

possession of a weapon); seven and eight (aggravated sexual assault

while armed with a weapon); and eleven and twelve (aggravated

sexual assault during the commission of a burglary).

 The judge imposed concurrent twenty-year prison terms, with

85 percent periods of parole ineligibility, on counts one, six,

nine, and ten, and ordered that the sentences be served consecutive

to the sentences defendant was then serving. The judge also imposed

a concurrent ten-year term, with a period of parole ineligibility

as prescribed by NERA, on count thirteen. Concurrent five-year

sentences were imposed on counts two and five.

 The judge again ordered defendant to comply with registration

under Megan's Law, required defendant to comply with Nicole's Law,

and imposed parole supervision for life. Defendant was ordered to

pay appropriate fines and penalties. The judge entered a judgment

of conviction dated May 2, 2014, and defendant filed an amended

notice of appeal on July 7, 2014.

 On appeal, defendant raises the following arguments:

 10 A-4815-13T3
 Point I – The Court erred in refusing to allow
 Cross Examination of [Detective] Carlos
 Carames[.]

 Point II – The Defendant was deprived of a
 Fair Trial by Cumulative Error, including
 Prosecutorial Misconduct[.]

 Point III – The Denial of the Motion in Limine
 Was Improper[.]

 Point IV – The Sentence is Excessive[.]

 II.

 We first consider defendant's contention the trial judge

erred by refusing to allow his attorney to cross-examine Detective

Carames about certain texts.

 Detective Carames was employed by the HCPO's Bureau of

Criminal Identification, and the State presented him as an expert

witness at both trials. At the first trial, Carames stated that

he was a member of the recovery team of the Federal Bureau of

Investigation (FBI), a member of the International Association of

Fingerprint Examiners, and a member of the consulting team to the

New Jersey State Police (NJSP) with regard to fingerprint

examinations.

 Carames had been provided with a latent fingerprint obtained

from the residence where the offenses involving S.L. and L.L. were

committed. He performed a manual comparison of the two prints and

opined that the fingerprints were the same. On cross-examination,

 11 A-4815-13T3
Carames said he was familiar with a report issued by the FBI in

June 2011 regarding fingerprint testimony.

 Defense counsel asked Carames about the FBI report, which

counsel said indicated that the FBI's fingerprint examiners are

no longer allowed to testify that they are 100 percent certain

that fingerprints match. The assistant prosecutor objected to the

question, and the judge ruled the defendant's attorney could not

question Carames about the report because it was not a recognized

learned treatise on the subject.

 It should be noted that earlier in the trial, the State had

presented testimony from Sandra Knox, the acting assistant

supervisor of the Automated Fingerprint Identification System

(AFIS) unit in the NJSP. Knox was qualified as an expert in

fingerprint analysis and identification. Knox testified as to her

peer review of a latent fingerprint analysis performed by an

examiner in the AFIS unit who had retired. Knox stated that the

analysis showed that defendant's fingerprint matched a fingerprint

recovered from the crime scene. She noted that there were fourteen

characteristic similarities between the prints, and the NJSP uses

ten characteristics as the threshold for a positive

identification.

 On cross-examination, defendant's attorney asked Knox if she

was familiar with an article published in 2009 in the National

 12 A-4815-13T3
Academy of Sciences Journal (NASJ), entitled "Strengthening

Forensic Science in the United States: A Path Forward." According

to defense counsel, the article criticizes certain courts for

"giving fuel to the misconception that the forensic discipline of

fingerprinting is infallible[,]" and the Analysis Comparison,

Evaluation and Verification methodology "does not guard against

bias or produce repeatable or reliable results[.]" Knox said she

was aware of the article, but she had not read it.

 The assistant prosecutor objected to this line of inquiry,

and the judge sustained the objection. The judge ruled that Knox

did not recognize the article as a known treatise, and she said

she had not read the article. The judge determined that the article

could not be used for impeachment purposes.

 On appeal, defendant argues that the judge erred by ruling

that the FBI report and NASJ article were not learned treatises,

and could not be used to impeach Detective Carames. Defendant

contends that use of these texts was necessary to effectively

impeach the State's experts with regard to the bias and reliability

of the method used for fingerprint analysis. We disagree.

 In general, "learned treatises are inadmissible hearsay when

offered to prove the truth of the matter asserted therein because

the author's out-of-court statements are not subject to cross-

examination." Jacober v. St. Peter's Med. Ctr., 128 N.J. 475, 486

 13 A-4815-13T3
(1992). Although learned treatises are "inadmissible as

substantive evidence, [they] may be used to impeach the credibility

of witnesses on cross-examination." Ibid.

 A learned treatise may be used for impeachment when the

witness recognizes that the text is authoritative. DeGraca v.

Laing, 288 N.J. Super. 292, 299 (App. Div.) (citing Jacober, supra,

128 N.J. at 498), certif. denied, 145 N.J. 372 (1996). However,

if the witness does not accept the publication as authoritative,

it may be shown to be a "reliable authority by experts other than

the cross-examined expert, as well as by judicial notice." Jacober,

supra, 128 N.J. at 409. Under Jacober, "a text will qualify as a

'reliable authority' if it represents the type of material

reasonably relied on by experts in the field." Id. at 495.

 In making a reliability determination, "[t]he focus should

be on what the experts in fact rely on, not on whether the court

thinks they should so rely." Id. at 495-96. If there is any doubt

as to the reliability of the text, the court should conduct a

hearing, either before or during the trial, "to determine whether

the text qualifies as a learned treatise." Id. at 496.

 The holding in Jacober was later reflected in N.J.R.E.

803(c)(18), which states that

 To the extent called to the attention of an
 expert witness upon cross-examination or
 relied upon by the expert in direct

 14 A-4815-13T3
 examination, statements contained in
 published treatises, periodicals, or
 pamphlets on a subject of history, medicine,
 or other science or art, established as a
 reliable authority by testimony or by judicial
 notice. If admitted, the statements may not
 be received as exhibits but may be read into
 evidence or, if graphics, shown to the jury.

 As noted previously, at the first trial, Knox testified that

she had not read the article published in the NASJ. Therefore, she

did not acknowledge that the article was an authoritative text on

fingerprint analysis. In addition, Carames did not acknowledge

that the FBI report was an authoritative text on the subject of

fingerprint analysis. Furthermore, defendant presented no expert

testimony showing that the NASJ article or the FBI report were

authoritative publications.

 Because neither the NASJ article nor the FBI report qualified

as a learned treatise under N.J.R.E. 803(c)(18), the trial judge

correctly found that defense counsel could not cross-examine

Carames using those texts. Moreover, there was insufficient

testimony to raise a genuine issue as to the reliability of the

article and report. Therefore, the judge was not required to

conduct a N.J.R.E. 104 hearing to determine if either text

qualified as a learned treatise under N.J.R.E. 803(c)(18).

 15 A-4815-13T3
 III.

 We next consider defendant's contention that his convictions

should be reversed due to prosecutorial misconduct. Defendant

argues that in both trials, the assistant prosecutor made

inappropriate comments that denied him a fair trial. He further

argues that he was denied a fair trial due to cumulative errors

on the part of the trial judge.

 When evaluating a claim of prosecutorial misconduct, the

court must consider "the severity of the misconduct and its

prejudicial effect on the defendant's right to a fair trial."

State v. Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 425

U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). "[P]rosecutorial

misconduct is not a grounds for reversal of a criminal conviction

unless the conduct was so egregious as to deprive [the] defendant

of a fair trial." Ibid. (citing State v. Chew, 150 N.J. 30, 84

(1997)).

 In reviewing the record to determine whether a prosecutor's

conduct warrants reversal of a conviction, the court "must consider

several factors, including whether 'timely and proper objections'

were raised; whether the offending remarks 'were withdrawn

promptly,' and whether the trial court struck the remarks and

provided appropriate instructions to the jury." State v. Smith,

212 N.J. 365, 403 (2012) (citations omitted) (quoting State v.

 16 A-4815-13T3
Frost, 158 N.J. 76, 83 (1999)), cert. denied, ___ U.S. ___, 133

S. Ct. 1504, 185 L. Ed. 2d 558 (2013).

 Here, defendant argues that in her summation in the first

trial, the assistant prosecutor improperly referred to S.L.'s

sexual assaults and other offenses as her personal 9/11/2001.

Defendant maintains that by making this statement, the assistant

prosecutor intended to inflame the jury. We note, however, that

in her testimony, S.L. compared being subjected to the sexual

assaults and other offenses to the events of 9/11/2001. Therefore,

the assistant prosecutor's remark was a fair comment on the

evidence presented at trial. See State v. Dixon, 125 N.J. 223, 259

(1991) (noting that in summation, a prosecutor may comment on the

evidence and draw reasonable inferences from the proofs).

 Defendant also contends that the assistant prosecutor

improperly inserted her personal opinions into her summation. He

points to the assistant prosecutor's remark regarding S.L.'s

identification. Referring to S.L., the assistant prosecutor

stated, "[t]his isn't somebody who doesn't deal with people of all

races." The comment was not improper. The assistant prosecutor

suggested that S.L. had the ability to identify defendant because

she had resided for several years in a multi-racial neighborhood

and worked in New York City. This was a reasonable inference based

on S.L.'s testimony.

 17 A-4815-13T3
 In addition, defendant contends the assistant prosecutor

improperly attempted to have the jury believe that he was in New

Jersey on September 23, 2010, the day before the offenses involving

S.L. and L.L. were committed. However, the assistant prosecutor's

remark was a fair comment on the evidence. As noted, defendant's

mother had testified that defendant was in New Jersey in September

2010, and she indicated he might have been present at his sister's

birthday party in Jersey City on September 23, 2010.

 Defendant also argues that the assistant prosecutor made

inappropriate remarks during the second trial. He asserts that the

assistant prosecutor stated she might call defendant's mother as

a rebuttal witness. Consequently, defendant's mother was not

permitted to be in the courtroom during the testimony of other

witnesses. Defendant asserts that the assistant prosecutor

intended to bar as many of his family members from the trial as

possible to give the jury the impression his family was not

supporting him. However, this contention has no support in the

record.

 Defendant further argues that the assistant prosecutor

improperly commented on the use of antidepressants. He notes that

the assistant prosecutor had objected to a question that

defendant's attorney asked on this subject. The assistant

prosecutor withdrew her objection, but made a comment regarding

 18 A-4815-13T3
these drugs. However, the remark was made at sidebar, and could

not have affected the jury's verdict in this case.

 In addition, the record shows that S.B. became ill while

testifying and had to leave the courtroom. During her re-direct

examination of S.B., the assistant prosecutor noted that S.B. had

become ill. Defendant argues that the prosecutor made an improper

appeal for the jury's sympathy. We disagree. There was nothing

improper about the comment.

 Defendant also contends that the assistant prosecutor made

improper remarks in her summation at the second trial and during

the sentencing proceedings. These contentions are without

sufficient merit to warrant discussion. R. 2:11-3(e)(2). We note,

however, that the assistant prosecutor's comments were fair

comments on the evidence, and the remarks at sentencing were not

improper.

 In addition, defendant argues that his conviction should be

reversed due to the cumulative effect of the judge's "misplaced

emphasis" on management of the jury rather than his right to a

fair trial and the alleged improper remarks by the assistant

prosecutor. He contends that the judge improperly moved the case

at a rapid pace, and the assistant prosecutor's comments reflected

a personal vendetta against him rather than the pursuit of justice.

 19 A-4815-13T3
 We are convinced that these arguments are without sufficient

merit to warrant discussion. R. 2:11-3(e)(2). The trial judge did

not conduct the trial with undue haste. Moreover, as we have

explained, the assistant prosecutor's remarks were fair comment

on the evidence.

 We therefore reject defendant's contentions that his

convictions should be reversed due to alleged prosecutorial

misconduct or cumulative error.

 IV.

 Defendant argues that the trial judge erred by denying his

motion to compel the DCPP to produce S.B.'s medical records for

an in camera review. Defendant asserts that a review of these

records was warranted to determine if they would support his

contention that if he had engaged in sexual activity with S.B.,

it was with her consent. Defendant argues that the court's denial

of his motion to compel production of the records violated his

right under the Sixth Amendment to the United States Constitution

to confront adverse witnesses.

 We note that records of the DCPP pertaining to abuse of

children are confidential, but may be released if a court

determines that "access to such records may be necessary for

determination of an issue before" the court. N.J.S.A. 9:6-

8.10(a)(6). When, as in this case, a defendant seeks the records

 20 A-4815-13T3
of a child protection agency like the DCPP, the court "must weigh

the conflicting constitutional rights of criminal defendants to a

fair trial and the confrontation of witnesses, against the State's

compelling interest in protecting child abuse information and

records." In re Z.W., 408 N.J. Super. 535, 536-37 (App. Div. 2009)

(citing Pennsylvania v. Ritchie, 480 U.S. 39, 59-61, 107 S. Ct.

989, 1002-03, 94 L. Ed. 2d 40, 58-60 (1987)).

 Here, defendant sought the DCPP's records in an apparent

effort to show that S.B. may have had a psychological condition

called "disinhibition," which purportedly would lend credence to

his claim that she engaged in sexual relations with him with

consent. It appears that S.B. had some involvement with a case

pending with the DCPP regarding a family member; however, it

appears that the records at issue do not relate directly to the

charges against defendant, and defendant's claim that S.B.

consented to the sexual assaults due to "disinhibition" rests on

speculation.

 We conclude that in view of the strong public policy to ensure

the confidentiality of the DCPP's records regarding children, the

judge did not err by denying defendant's motion to compel

production of the DCPP's records. We reject defendant's contention

that the judge's ruling violated his right to confrontation under

the Sixth Amendment.

 21 A-4815-13T3
 V.

 Defendant argues that his sentence is excessive. He contends

the judge erred by imposing an extended-term sentence. He also

contends the judge erred by failing to merge certain offenses for

sentencing.1

 Initially, we note that the scope of our review of the trial

court's "sentencing decisions is relatively narrow and is governed

by an abuse of discretion standard." State v. Blackmon, 202 N.J.

283, 297 (2010). We may not set aside a sentence unless (1) the

trial court did not follow the sentencing guidelines; (2) the

court's findings of aggravating and mitigating factors were not

based upon sufficient credible evidence in the record; or (3) the

court's application of the sentencing guidelines to the facts of

the case "shock[s] the judicial conscience." State v. Bolvito, 217

N.J. 221, 228 (2014) (alteration in original) (quoting State v.

Roth, 95 N.J. 334, 364-65 (1984)).

 Defendant argues that the judge erred by granting the State's

motion for imposition of an extended term sentence pursuant to

N.J.S.A. 2C:44-3(a), on the ground that he is a persistent

1 We note that in its brief, the State asserts that defendant's
"ultimate" sentence is life plus forty years. However, the record
shows that the sentence imposed after the first trial was life
plus forty years, and a consecutive sentence of twenty years was
imposed after the second trial. Thus, defendant's aggregate
sentence is life imprisonment, plus sixty years.

 22 A-4815-13T3
offender. The trial judge correctly determined that defendant

qualified for an extended-term sentence. We reject defendant's

contention that an extended term should not have been imposed

because his prior convictions were not for violent offenses. The

statute imposes no such requirement.

 Defendant also argues that the extended term of life

imprisonment is excessive. Here, the judge found aggravating

factors one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of

the offense, including whether or not it was committed in a

heinous, cruel, or depraved manner); two, N.J.S.A. 2C:44-1(a)(2)

(gravity and seriousness of harm to the victim); three, N.J.S.A.

2C:44-1(a)(3) (risk that defendant will commit another offense);

six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal

record); nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and

others from violating the law); and twelve, N.J.S.A. 2C:44-

1(a)(12) (defendant knew or should have known that a victim was

sixty years or older). The judge found no mitigating factors.

There is sufficient credible evidence in the record to support the

judge's findings. In view of the court's findings, the imposition

of an extended term of life imprisonment was not an abuse of the

trial court's sentencing discretion.

 Defendant further argues that the judge erred by failing to

merge certain offenses. He contends that count fourteen should

 23 A-4815-13T3
have merged with count twenty-six, and count twenty-nine should

have merged with count thirty.

 In count fourteen, defendant was charged with vaginal

penetration of L.L. while armed with a weapon, and in count twenty-

six, he was charged with vaginal penetration of L.L. during the

commission of a burglary or robbery. In count twenty-nine,

defendant was charged with an act of sexual penetration of L.L.

(fellatio) while armed with a weapon, and in count thirty,

defendant was charged with an act of sexual penetration of L.L.

(fellatio) during the commission of a burglary or robbery.

 Defendant notes that the sexual acts charged in counts

fourteen and twenty-six, and those charged in counts twenty-nine

and thirty are the same. He therefore argues that the offenses

should have merged for sentencing. We agree. Imposition of separate

sentences on all four counts, which involved two separate acts of

sexual penetration, is inconsistent with the principle that "[i]f

an accused has committed only one offense he cannot be punished

as if for two." State v. Davis, 68 N.J. 69, 77 (1975).

 We emphasize, however, that separate sentences were

appropriate for the underlying offenses of unlawful possession of

a weapon and burglary because the aggravated sexual assaults are

"separate and distinct from the underlying offenses." State v.

Cole, 120 N.J. 321, 332 (1990). We also note that the merger of

 24 A-4815-13T3
the offenses will not affect the aggregate term of incarceration

imposed.

 We reach the same conclusion with regard to the charges in

counts nineteen and twenty-seven; counts thirty-one and thirty-

two; and counts one and nine. In count nineteen, defendant was

charged with an act of sexual penetration of S.L. (fellatio) while

armed with a weapon, and in count twenty-seven, he was charged

with an act of sexual penetration of S.L. (fellatio) during the

commission of a burglary or robbery. In count thirty-one, defendant

was charged with the digital penetration of S.L., while armed with

a weapon, and in count thirty-two, he was charged with the digital

penetration of S.L., during the commission of a burglary or

robbery. We conclude that, because counts nineteen and twenty-

seven involved the same sexual act, count nineteen should have

merged with count twenty-seven. Similarly, count thirty-one should

have merged with count thirty-two. Merger was not, however,

required with the underlying offenses of unlawful possession of a

weapon and burglary.

 For the same reason, the court should have merged counts one

and nine, and counts six and ten. Count one charged defendant with

vaginal penetration, risk of serious bodily harm, upon S.B.; and

count nine charged defendant with vaginal penetration, during the

commission of a burglary. In addition, count six charged defendant

 25 A-4815-13T3
with anal penetration, while armed with a weapon, and count ten

charged defendant with anal penetration, during the commission of

a burglary. The sexual acts charged in counts one and nine, and

in counts six and ten are the same. Therefore, the court should

have merged counts one and nine, and six and ten for sentencing.

Again, merger was not required with the underlying offenses of

unlawful possession of a weapon and burglary.

 Accordingly, we affirm defendant's convictions, and the

sentences imposed, with the exception of the sentences imposed on

counts nine, ten, twenty-six, twenty-seven, thirty, and thirty-

two. We remand the matter to the trial court for entry of amended

judgments of conviction merging the offenses in accordance with

this opinion. We do not retain jurisdiction.

 26 A-4815-13T3